### EAST LINE & RED RIVER RAILROAD COMPANY v. W. F. SCOTT.

#### No. 2568.

1. **Attorney—Compromise.**—An attorney for a railway company has no authority when acting under general authority as such, in defending a suit instituted against the company by an employe for damages, to compromise the suit on terms which involve the permanent future employment by the company of the plaintiff. Such a contract can only be valid when made in pursuance of special authority.

2. **Consideration.**—The compromise of a pending action whereby a plaintiff agrees to accept a moneyed judgment in his favor for a less amount than the damages claimed in his petition, and a promise of defendant to give him employment in the future in full satisfaction of his claim, is a sufficient consideration to support the contract for future employment. The absence of a promise by the plaintiff to serve in the future employment would be immaterial except as it might affect the certainty of the agreement.

3. **Charge of Court.**—See opinion for a charge of court not applicable to the case as made by pleading and evidence, and therefore properly refused.

4. **Contract.**—When by the terms of a contract between employer and employe the term of service is left to the discretion of either party, or is left indefinite or determinable by either party, then either party may put an end to it at will, and it is not only not a breach of the contract to refuse to accept further services, but a refusal to accept any at all would entitle the employe to recover only nominal damages.

5. **Contract—Employer and Employe.**—A contract supported by sufficient consideration, whereby an employer agrees to give another employment for whatever length of time the employe may desire to serve, entitles the employe to fix the period of his service when he presents himself for work, and he will be entitled to damages for a breach of contract if not furnished with employment for the time thus fixed. The original contract is made certain when the period of service is fixed, and is not within the statute of frauds.

6. **Cases Cited and Approved.**—Railroad Company v. Dane, 43 N. Y., 241, and Bolles v. Sachs, 33 N. W. Rep., 862, cited and approved.

7. **Evidence.**—When a judgment is silent as to the terms of a compromise under which it was entered, and there is nothing on its face indicating that it was based on a contemporaneous parol agreement, parol evidence of such agreement is admissible in a suit to recover damages for a breach of the compromise contract.

APPEAL from Marion. Tried below before Hon. W. P. McLean.

*F. H. Prendergast,* for appellant. — There was error in refusing special charges 1, 2, 3, and 5 (referred to in the opinion). Story on Contracts, secs. 1 and 448; Wood's Statute of Frauds, pp. 471–473 (note), 475, 477, 483, 485, 495 (note), 499; Bolles v. Sachs et al., 33 N. W. Rep., 866; and Wood's Master and Servant, sec. 131.

The court erred in not granting a new trial, because the evidence showed that in contemplation of the parties the contract sued on was not to be performed in one year from the making thereof, and was not in writing, and was void under the statute of frauds, citing Wood's Master and Servant, sec. 189; Wood's Statute of Frauds, pp. 471, 473 (note), 475, 495 (note), 499.

The court erred in not granting a new trial, because the verdict is contrary to the law and the evidence, in this, there was no pleading nor evidence that plaintiff Scott ever agreed to work for defendant company for any length of time, and said contract was void for want of certainty. Provost v. Harwood, 29 Vt., 219; Peacock v. Cummings, 46 Penn. St., 434; Dunn v. Sayles, 5 Q. B., 685; Harper v. Hassard, 113 Mass., 187.

*H. McKay* and *C. A. Culberson,* for appellee. — 1st. The contract upon which the appellee seeks to recover is repugnant to the statute of frauds.

2d. The want of authority in Campbell and Taylor to act for and bind the company in the premises.

3d. There was no mutuality of obligation upon the parties to the contract.

4th. There was no definite time fixed for the duration of the contract, and hence no basis for computing the damages for the breach of same.

And upon these four grounds of defense we submit the following counter-propositions:

1st. A contract which may or may not be performed within a year is not within the statute of frauds. The contract must itself show affirmatively that it is not to be performed within a year. Thouvenin v. Lea, 26 Texas, 614–15.

2d. The agent and attorney at law of appellant being before the court and acting for the company, with ostensible authority to act for and bind it in the premises, and the company afterwards accepting the benefits of the compromise with knowledge of the facts, or after coming to a knowledge of the facts and still retaining such benefits, is bound by the acts of its agent.

Stayton, Chief Justice.—The general nature and result of this action is thus stated in the brief by counsel for appellant:

" On November 10, 1886, W. F. Scott filed suit in the District Court of Marion County against appellant, alleging that he was injured by the

appellant in 1882; that he filed suit for damages, which was compromised in 1884 by the railroad paying him $4500, and agreeing to employ Scott as engineer so long as he desired to be so employed; that they paid the $4500, but when Scott applied for employment on July 1, 1886, they refused to employ him. Defendants deny the agreement, and say if any such agreement was made with Campbell and Taylor they had no authority to make it; that the agreement was void because not in writing and not to be performed in a year; the agreement was contrary to public policy, and was not incorporated in the judgment which contained the settlement in 1884, and was not mutually binding on both parties, and indefinite. January 14, 1888, judgment for $2400 for plaintiff. Defendant appealed."

The petition alleges so much of the compromise agreement as affects the case before us, as follows: "It was further agreed 'that the said company thereafter, when this plaintiff should ask for and accept service and employment by the said company in the running and operating its said railroad, in the employment of locomotive engineer, that this being and still is the trade, occupation, and profession of your petitioner, would employ petitioner for whatever length of time your petitioner might desire to retain such employment, and at the reasonable and customary pay and wages of such employe on railroads, which then was and still is from $100 to $150 per month; which proposition of settlement and compromise your petitioner did then and there accept in full satisfaction and settlement of all his claim for damages.' "

The petition then alleges that appellee proposed, about July 1, 1886, to enter appellant's service as contemplated by the compromise agreement, but that appellant refused to receive his services or pay for them, and then proceeds as follows: "That the said services and the wages therefor are and would be worth to your petitioner the sum of, to-wit, $150 per month from the said first day of July, 1886, for a reasonable period of at about the next ten years; that plaintiff is now a man of about twenty-six years of age, and has reasonable expectation of living and exercising his said trade and profession for the next ten years, and so plaintiff says that he has been damaged by said company in the sum of, to-wit, $20,000. Wherefore," etc.

The evidence offered for appellee was sufficient to show, if uncontroverted, that E. W. Taylor, who may have been assistant secretary for the company, and Col. Campbell, an attorney representing the company in the defense of that case, may have made an agreement, at the time of and as a part of the compromise, looking to the future employment of appellee.

The statement of appellee in regard to that is: "I finally told them I would take $4500 if they would give me a job on the defendant's road—that is, that they would give me the position of locomotive engineer on the road, such as I had, for life. I told Col. Campbell that I wanted it

fixed up so that I could not be fired, meaning that they could not dis-
charge me.   He answered that he did not know so much about that.   I
told him he could fix it that way, and he finally said all right, let it go
that way, and the contract as above stated was agreed upon."

Another witness who was present stated that the agreement was "that
the road would pay $4500 and give plaintiff a position of engineer for life."

The testimony of appellee as to his application for employment is that
"about June 28, 1886, I applied to Col. E. W. Taylor for work on the road
under the contract, and told him I was ready to go to work."

He then states that Taylor gave him a letter of recommendation to the
company's master mechanic, who referred him to a Mr. Clark, his supe-
rior in authority, whose business it was to employ engineers.   In reference
to his interview with Clark he states:   "I then saw Clark about it, stating
what I wanted and my case.   He says to me:  'You had a suit against
the company, didn't you?'  I told him I did.   He said:  'I have no place
for you.'  I then told him good morning and left.   *   *   *   I would
have taken the position of engineer for life, and I suppose I had an ex-
pectation of living perhaps ten years."

The appellant asked the court to instruct the jury that "there being
no proof before you that Campbell had any other authority than as the
attorney for defendant, you are charged that an attorney would not have
authority to make the contract sued on, merely because he was attorney;
therefore the contract made by Campbell can not bind the company."

This charge was refused, and correctly so if there was any evidence
tending to show with reasonable certainty that Campbell had authority
to make the compromise.   That he did agree to a compromise judgment
which the appellant recognized and satisfied is rendered clear by the evi-
dence before us.   The jury might look to this, although it is not di-
rectly shown that he had authority to make that part of the agreement
not contained in the judgment, as tending to show that he had authority
to make a compromise.   Col. Campbell was not alive at the time of the
trial, and his testimony seems not to have been taken.

While an attorney by virtue of his employment has not authority to
make a compromise of an action he is employed to prosecute or defend,
it is not to be presumed when one so situated assumes the right to exer-
cise such a power and does exercise it, that this was done without lawful
authority, and but slight evidence in such a case may be sufficient to
authorize the belief that he was clothed with all the power he assumed
to exercise.

That Col. Campbell agreed to the compromise judgment is not con-
troverted; his power to do that is not questioned, though the manner in
which it was conferred is not shown.   He reported the compromise judg-
ment, and those who seem to have had general control of the litigation of

the company found no fault with his action, but approved it for payment and the company satisfied it.

The inference from the evidence is very strong that, in reference to the persons who were injured at the same time appellee was—of whom there were many—Col. Campbell may have been given all the power he assumed to exercise.

E. W. Taylor testified "that when plaintiff was injured on August 7, 1882, on the road, many others were also injured and several were killed. Witness, as agent and interested party, had endeavored to settle and compromise the cases. Col. Campbell represented the defendant in all the cases—in the Scott, Harper, Rosser, Tetso, and other cases; and all of them except those of Harper and Tetso had been settled by Campbell and the witness. Witness and Campbell also had endeavored to compromise the Harper and Tetso cases for defendant, but without success."

In view of all these facts, we are of the opinion that there was evidence from which the jury might fairly find that Col. Campbell had power to make the compromise, and although there was evidence tending to show to the contrary, it was not error to refuse the instruction asked.

Appellant asked a charge, which the court refused, that was, "There being no evidence nor pleadings before you that plaintiff was bound by the contract sued on, nor that he agreed to be bound by it, there was therefore a want of mutuality in the contract and defendant is not bound by it."

Reciprocal promises made at the same time and in relation to an agreement, furnish the one for the other a consideration to support a contract, and if the appellee was relying on such a consideration to sustain the contract he would fail, for there is no pretense that he promised to render any services whatever for the appellant.

On the contrary, his petition shows that it was optional with himself whether he served the appellant.

The contract alleged, however, does not rest on such a consideration.

The asserted compromise of the pending action, whereby the appellee agreed to accept the judgment rendered and the promise made in satisfaction of his claim for damages, was the consideration on which the contract may well stand.

The consideration was sufficient, and the absence of a promise by the appellee to serve is a matter of no importance except as it may bear on the question whether the contract was sufficiently certain.

The promise alleged contained two propositions:

1. That appellant would employ appellee as a locomotive engineer.

2. That for such services as he should render it would pay to him the compensation usual in such employment.

The promise to do these things being binding, had the appellee rendered services in accordance with the contract he would have been en-

titled to receive compensation therefor under the contract, and not upon an implied contract.

That could be but the ordinary case of a promise by one person to pay to another money when he shall have performed some specified service, which when done the contract is held to be executed on one side, the consideration for the promise paid or given, and the contract complete.

The charge refused was not applicable to the case made by the pleadings or proof, and was, therefore, correctly refused.

The following charge was also asked: "The jury are charged that there is no pleading nor proof that the contract sued on was for service for any definite period of time, and no evidence that plaintiff ever offered to be bound to work for any definite period of time; then the contract is too indefinite and plaintiff, can not recover."

This charge was refused. Whether the contract was sufficiently certain as to the period of time appellee should render services for appellant was also raised by the motion for new trial. The petition does not aver that appellant ever contracted to employ appellee for any definite period of time, but distinctly alleges that it did promise to give him employment "for whatever length of time which your petitioner *might desire to retain such employment.*"

The petition also alleges that appellee, "about the first day of July, 1886, offered to said company for employment, he then having sufficiently recovered from his said injuries;" and it then gives an estimate of the value of the services of appellee for a period of two years following the date mentioned, but it nowhere alleges that appellee agreed to serve appellant for any fixed period of time.

The evidence tends to show that the promise made on compromise was to give to appellee employment during his life, but it does not show that when appellee sought employment he proposed to render services for any named period, or so long as he might live and be able to perform the services contemplated.

We must take the contract as alleged in the petition to be the contract on which appellee must recover, if at all; and looking to that, there can be no doubt that whether appellee should serve appellant and the term of such service depended upon his own will.

It is very generally if not uniformly held, when the term of service is left to the discretion of either party, or the term left indefinite or determinable by either party, that either may put an end to it at will and so without cause. Harper v. Hassard, 113 Mass., 187; Coffin v. Landes, 46 Pa. St., 431; Woods's Master and Servant, secs. 133, 136, and citations.

When such a state of agreement exists it is no breach of contract to refuse to receive further services; and the refusal to accept any at all it would seem at most would entitle the engaged servant only to nominal damages.

If the pleadings of appellee be accepted as true there can be no doubt that there was an agreement that appellant would give employment to appellee; but as the period for which this should be done was dependent on the will of appellee to be exercised in the future, there was no contract binding appellant to employ appellee for any fixed period; the minds of the parties had not met as to a material element of the contract to which the agreement looked—the period of service.

We are of opinion, however, while this is true, that the agreement made conferred on appellee the right to fix the period for which he would serve; and that if he had done so when he demanded employment he would be entitled to recover for the breach of the contract which would have been thus completed and made certain by the exercise and expression of his will, which, for a valuable consideration paid, he had acquired the right to exercise for this very purpose.

It was optional with appellee when the agreement was made whether he would serve appellant or not, but by the terms of the agreement he was given the right to fix the period he would serve if he willed to serve at all.

The right to this option could not be sustained on the theory of reciprocal promises as the consideration; for, as we have seen, the appellee at the time of the agreement made no express promise to serve, and no implied promise to that effect arises from the agreement, but the consideration to which we have before referred was sufficient to support the promise of appellant to permit appellee to fix the period of service and to have employment during that time, subject, however, to lose the right for inability to discharge the duties of the employment or by misconduct.

If, when appellee sought to enter the service of appellant, he had fixed the period for which he would serve, then would there have been a complete contract, certain in its terms, by which both parties would have been bound.

In Railroad Company v. Dane (43 N. Y., 241) it appeared that the railway company by letter offered to receive and transport from New York to Chicago railroad iron not to exceed a certain number of tons, during months specified, at a given rate per ton, and the party to whom the letter was directed merely assented to the proposal, but did not agree to deliver any iron for transportation, and it was held that there was no contract binding on either party for want of mutuality.

The action was brought by the person to whom the the offer was made, and, while holding as above stated, the court said: "Had there been a consideration given to the defendant for such option, the defendant would have been bound to transport for the plaintiff such iron as it required within the time and quantity specified, the plaintiff having its election not to require the transportation of any."

"There can be no doubt but that a contract may be so made as to be

optional on one of the parties and obligatory on the other, or obligatory at the election of one of them," is the declaration of the Supreme Court of New York.   Giles v. Bradley, 2 Johns. Cases, 253.

We need not go so far as to adopt the entire proposition, but the last branch of it is doubtless correct in all cases in which the option to make an agreement obligatory is supported by valuable consideration.

The case of Bolles v. Sachs (33 N. W. Rep., 862), decided by the Supreme Court of Minnesota, involved a contract for services, supported by consideration other than mutuality of contract, which was wanting, in that the period the plaintiff was to serve was not fixed by the agreement.

The defendants having declined to keep the plaintiff in their service, he brought an action for damages, and recovered $1100.   In disposing of the case the court said:   " The contract was perhaps effectual to give to the plaintiff the option to himself to fix the duration of it, but unless he exercised that election and actually determined the period so as to make certain that which by the terms of the contract was uncertain, he could recover only for the period of his actual service.   *   *   *   It is self-evident that courts can neither specifically enforce contracts nor award substantial damages for their breach when they are wanting in certainty. Damages can not be *measured* for the breach of an obligation when the nature and extent of the obligation is unknown, being neither certain nor capable of being made certain.   It does not appear that the plaintiff ever determined that he would continue in this business for any definite period, or that he declared his election in this respect.   Had he not been discharged, he might at will, at any time after making the contract, have himself abandoned the employment because of dissatisfaction, or for any other reason.   Since the period of his service was thus left to depend upon his own volition and never became fixed, it can not be assumed that he would have voluntarily remained in this employment up to the time of trial—more than a year—so as to justify an assessment of damages on that theory.   Perhaps the defendants could not, by abruptly breaking the contract by discharging the plaintiff, deprive him of the right to exercise his option to fix a definite and reasonable period of service.   But,. though he might have exercised and declared his election even when he was notified of his discharge, and, by thus tendering performance under the terms thus reduced to certainty, have placed himself in a position to recover damages measured with reference to the terms of the contract thus fixed, he does not appear to have done so."

This seems to us correct, if we do not lose sight of the fact that there is no binding *contract* for service for a future period until the term of its duration is fixed, while there may be a contract, if supported by sufficient consideration, which will give the right to one party to make the contract for service complete by fixing the term during which it becomes obliga-

tory on the one to serve and on the other to accept and pay for the services.

It is urged, however, by appellee that he did fix the period of service—that he elected to serve for life. He does not say so in his evidence. He states that such was the agreement at the time the compromise was made, but this is inconsistent with his pleadings. He does, in effect, say that by reason of the contract he demanded employment, but does not say that he elected to serve or declared an intention to serve during life or for any other period certain or that can be made certain.

We are of the opinion that a new trial should have been granted on the ground that we have mentioned, and that a charge upon that subject embodying the views herein expressed should have been given.

It is urged that the contract set up was invalid under the statute of frauds. If the contract be as alleged in the pleadings or as stated in the evidence, we are of the opinion that it is not subject to the objection urged against it. Thouvenin v. Lea, 26 Texas, 615; Thomas v. Hammond, 47 Texas, 52; Bishop on Contracts, 1237–1281; Wood on Frauds, 270–272. In either event the contract might be performed within one year, and the performance complete within the true intent and understanding of the parties. It was more than two years from the time the compromise agreement was made until appellee sought service, and it is urged that this delay relieved appellant from obligation to employ, if it ever existed.

The evidence shows that appellee sought employment as soon as he recovered from the injuries under which he was suffering at the time the compromise was made sufficiently to be able to discharge the duties of the employment. Any agreement made must have been made in view of the fact that appellee was disabled at the time by his wounds, and with no expectation that he would resume labor until he could sufficiently recover from them to discharge the duties of engineer.

It is claimed that the court erred in permitting witnesses to state any contract or agreement other than that embodied in the judgment, and the ground of this objection is that such evidence tended to vary the effect of the judgment. The agreement of the parties for compromise was oral, and the judgment rendered does not undertake to embody it, nor does it even recite that it was rendered in accordance with an agreement. The question is decided adversely to appellant in Thomas v. Hammond, 47 Texas, 52.

For the errors noticed, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion November 20, 1888.