## NELSON v. BINFORD. (No. 2250.)

Court of Civil Appeals of Texas. El Paso.
April 11. 1929.

Bailey & Bailey, of Dallas, for appellant.

G. G. Gannon, of Houston, and Robertson, Robertson & Gannon, of Dallas, for appellee.

PELPHREY, C. J. This case was instituted by appellant as plaintiff against appellee and the Hall Curtain Corporation, as defendants, in the 101st district court of Dallas county, Tex.

Later the Hall Curtain Corporation was dismissed from the suit, and, as between the remaining parties, the Ninety-Fifth district court of Dallas county, to which the case had been transferred, sustained a general demurrer to plaintiff's petition on the ground that the contract set out in the petition was indefinite as to time and would not support a cause of action for an interest in the business for which plaintiff sued.

Plaintiff refusing to amend, the court entered judgment in favor of the defendant, and plaintiff appeals.

The question presented being one of pleading, we will here set out such parts of the petition of plaintiff as we think necessary to a determination of the case.

Omitting the formal parts, the petition reads:

I. "That heretofore, to wit, on or about the 15th day of December, 1924, the defendant J. R. Binford, made an offer to the plaintiff, according to the terms of which defendant Binford, who was then the owner of a business known as the Hall Specialty Company, the assets of which were worth the sum of $25,000 agreed to and bound himself to deliver to this plaintiff a one-fifth interest in said business known as the Hall Specialty Company, in consideration of the plaintiff Nelson agreeing to go to work and to render his services as salesman for said Hall Specialty Company, at a salary of $350.-00 per month together with whatever expenses said plaintiff might incur."

II. "The defendant Binford further agreed and obligated himself to incorporate a company to be known as the Hall Curtain Corporation, to which all of the assets of the Hall Specialty Company would be transferred, and in which this plaintiff would receive his one-fifth of $25,000 and a salary of $350.00 per month and expenses, the same as from Hall Specialty Company."

III. "The plaintiff Nelson was at the time previously mentioned a salesman in the employ of the Bridgeport Lace Company, a corporation, with a home office at Bridgeport, Connecticut, established in 1837, and had a large and profitable business at that time in the State of Texas, and surrounding territory; that the plaintiff was one of the most successful salesmen in the employ of that Company, and in order to induce this plaintiff to leave the employ of the Bridgeport Coach Lace Company, and to give his services in the interest of the defendant Binford and the Hall Specialty Company and the proposed Hall Curtain Corporation, the defendant Binford agreed, bound and obligated himself on behalf of himself, individually and of the corporation to be organized, to deliver to the plaintiff an amount equal to one-fifth of $25,000.00 the proposed capital stock of the Hall Curtain Corporation."

IV. "This plaintiff, on February 5th, 1925, accepted the offer so made by the defendant Binford and agreed to render his services as said salesman, as per the contract previously mentioned, on or about March 15th, 1925, and on said date or shortly thereafter this plaintiff reported for duty to the defendant Binford, at that time the owner and operator of the Hall Specialty Company, in accordance with the agreement as previously set out; that shortly thereafter, and about the middle of April, the defendant Binford organized and incorporated the business which he had previously and theretofore operated individually under the name of the Hall Curtain Corporation; that the defendant transferred to

said Corporation the sum of the assets of the Hall Specialty Company, in which this plaintiff was at that time the owner of an undivided one-fifth interest therein, and received in exchange therefor the sum of $21,000 par value of stock in the Hall Curtain Corporation; that this plaintiff is informed and so alleges and believes that the total assets of which he was the owner of an undivided one-fifth interest therein amounted to the sum of $25,000; but that the defendant Binford did not transfer $4,000 of the assets of the Hall Specialty Company to the Hall Curtain Corporation, but retained same to his own use and benefit; that stock for said $21,000 of the assets of the Hall Curtain Corporation was issued to and in the name of the defendant J. R. Binford, but that said defendant received one-fifth thereof for the benefit of and as trustee for this plaintiff, and said defendant holds one-fifth of the remaining $4,000 of the assets of the Hall Specialty Company, for the benefit of and as trustee for this plaintiff. The fact that the total assets of the Hall Specialty Company in the sum of $25,000, were not transferred to the Hall Curtain Corporation, but that only $21,000 thereof had been so transferred was unknown to the plaintiff until the filing of the defendant's first amended answer herein; and he was at all times prior to said date, under the impression that the entire $25,000 had been so transferred, and that he was and had been entitled to his one-fifth interest therein and to the ownership of the stock in the Hall Curtain Corporation represented thereby."

VI. "That on July 1st, 1926, the defendant Binford repudiated his contract agreement with this plaintiff, and refused to deliver any of the capital stock of the Hall Curtain Corporation or to carry out his said contract in any manner according to the terms and effect; but, that, on the contrary, at that time this plaintiff had done and performed all the duties devolving upon him under said contract and had completely performed his part thereof."

VII. "That from and after the incorporation of said Company and up until July 1st, 1926, and further until this date the defendant Binford has received and retained and refused to turn over to this plaintiff any and all dividends paid on said stock by the Hall Curtain Corporation, which this plaintiff here and now alleges amount to the sum of approximately $4,000."

VIII. "That the stock in the Hall Curtain Corporation to which this plaintiff is entitled is worth the reasonable sum and has a value of $8,000, and was worth the same value as of date July 1st, 1926; all to plaintiff's damage in the sum of $18,000."

"Wherefore, premises considered, plaintiff prays in the alternative as follows:

"(1) That the plaintiff Nelson have judgment against the defendant Binford in the sum of one-fifth of $4,000, with interest thereon from the middle of April, 1925, until this date: and

"(2) For the value of one-fifth of the sum of $21,000 of the capital stock of the Hall Curtain Corporation together with all dividends thereon which may have been paid up to July 1st, 1926, which is alleged to be the sum of $13,000, with interest thereon from the day and dates the dividends were paid and with interest on the value of the stock from July 1st, 1926; and,

"(3) For the value of $5,000 capital stock of the Hall Curtain Corporation, with interest from July 1st, 1926, together with all dividends paid thereon from the middle of April, 1925, to July 1st, 1926, with interest from date of payments of same, the total of which plaintiff alleges to be the sum of $14,000."

It can be seen from the allegations above that the purpose of the contract alleged was to secure the services of plaintiff, Nelson, as a salesman for the company of defendant, and for his services he was to receive a one-fifth interest in the business besides $350 per month and expenses. There is no allegation as to what length of time plaintiff would be bound to stay in the employ of defendant to entitle him to the one-fifth interest.

We cannot agree with appellant that the contract was one from month to month, for, taking all the terms into consideration, we cannot believe that the parties contemplated the giving to appellant of a one-fifth interest in a $25,000 business just for his services for one month, and especially when he was receiving $350 per month as salary together with his expenses.

In the case of Bolles v. Sachs, 37 Minn. 315, 33 N. W. 862, the Supreme Court of Minnesota had this to say in a case where a contract for services was involved and the period plaintiff was to serve was not fixed by the agreement: "It is self-evident that courts can neither specifically enforce contracts, nor award substantial damages for their breach, when they are wanting in certainty. Damages cannot be measured for the breach of an obligation when the nature or extent of the obligation is unknown, being neither certain nor capable of being made certain."

The case was quoted with approval by our Supreme Court in the case of East Line & R. R. Ry. Co. v. Scott, 72 Tex. 70, 10 S. W. 99, 13 Am. St. Rep. 758. In this case the court said: "It is very generally if not uniformly held, when the term of service is left to the discretion of either party, or the term left indefinite or determinable by either party, that either may put an end to it at will and so without cause" citing cases.

In the same case the court further said: "There is no binding contract for service for a future period until the term of the duration is fixed."

Appellant came into court asking that he be

granted certain relief because of a breach of a contract of employment by appellee, and yet in his allegations he fails to show that any time was ever agreed on for him to serve to entitle him to the relief sought. ,

We have studied the several propositions presented by appellee and find them without merit.

The judgment of the trial court is accordingly affirmed.