John M. BRENNAN, Appellant,

v.

MIDLAND MEMORIAL HOSPITAL and Ray Branson, Individually and in his capacity as Hospital Administrator, et al., Appellees.

No. 08–90–00220–CV.

Court of Appeals of Texas,
El Paso.

May 8, 1991.

Eva Marie Leahey, Odessa, for appellant.

Ted M. Kerr, Kerr, Fitz–Gerald & Kerr, Midland, Christopher A. Knepp, Hughes & Luce, Austin, for appellees.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

OPINION

OSBORN, Chief Justice.

This appeal is from a summary judgment denying recovery of damages to an employee of a hospital who sued his employer and its administrator after his employment was

terminated for violation of hospital policy. We affirm.

This case arises out of a rescue operation which received nationwide publicity. In October 1987, Jessica McClure fell into an abandoned well in the backyard of an aunt's home in Midland, Texas. Until the time of her rescue, practically every local, state and national newscast reported on the rescue operations. Midland, Texas received more publicity than it would have received if its one-time resident and then Vice–President, George Bush, had made a visit to the city. For a short period of time, the nation's eyes were focused on the rescue operations in the "Tall City." It was the only time in the city's history when no one cared about the results of a drill stem test or the depth of holes being made by rigs in the Permian Basin. The only question was whether the backyard operations would be successful and the child could be recovered alive.

At that same time, John Brennan was working as a respiratory therapist for Midland Memorial Hospital. When he went to work on October 16, 1987, he took his camera. On that date, Jessica McClure was admitted to the hospital emergency room following a difficult but successful rescue. After allegedly obtaining permission from the child's mother, Reba McClure, Brennan took pictures of the child whose recovery had been covered by all major networks. Later, he negotiated a deal to sell the pictures to the *New York Times*. On October 18, the pictures appeared in the local newspaper, the *Midland Reporter–Telegram*.

On October 17, Brennan was summoned from his duty station at the hospital to the office of Ray Branson, the President and Chief Executive Officer of the hospital. Also present at the meeting were Harold Rubin, Senior Vice–President of the hospital and Ron Pollock, Director of the Cardiopulmonary Department and Brennan's immediate supervisor. At the meeting, Brennan said he had tried to obtain permission from the hospital's public relations department to take pictures but never received such permission. He did report that he had obtained oral permission from the child's mother to take the photographs and sell them. Branson advised him at that meeting that hospital policy prohibited taking photographs in the hospital without the signed, written consent of the child's parents and that because of his violation of that policy, he was suspended from his employment pending further investigation. At that time, the hospital issued a news release in which it said that hospital officials learned late Saturday night that unauthorized photographs of Jessica McClure were taken and released to national media by a hospital employee. The release said this action was in violation of hospital policy and that the employee had been suspended. Mr. Brennan was not identified in the news release.

In the affidavit attached to the motion for summary judgment, Ray Branson states that on Monday, October 19, 1987, Mr. Brennan resigned his employment with the hospital in lieu of being discharged.

In his first amended petition, John Brennan alleges that he was denied "due process of the law in the controvention [sic] of the United States Constitution, 14th and 5th Amendments, as well in controvention [sic] of the *Due Course of Law* clause of the Constitution of the State of Texas." He asserts the action of the hospital was "in violation of Section 42 U.S.C. 1983."

In his deposition testimony, Mr. Brennan states that he did tell Mrs. McClure that as a result of this (taking pictures) he did stand a chance of being terminated. He readily acknowledges that he did not get authority from the hospital to take these pictures. In his testimony, Mr. Brennan says he was first paged by his director at approximately 8:30 p.m. Dr. Rubin was also present and they inquired about the release of the pictures. He was not sure how they knew about the pictures because they were not to be published until Sunday morning in the *New York Times*. About an hour later, he was again paged by his director and told the hospital administrator wanted to see him. According to his testimony, at that second meeting on Saturday evening he was told that he "had broke the law" but was never told what law he had

broken. That statement was made in Mr. Branson's office with Harold Rubin and Ron Pollock present. At that meeting, he was shown a bound notebook with the hospital policy on photographing. Mr. Brennan said at that meeting he was not aware of that particular policy. After being suspended on Saturday night and then being terminated on Monday morning, he presumed that Ray Branson had told others about his breaking the law, but he was not aware of anybody having said that. Although he was aware of the hospital policy which provided a grievance procedure, he did not avail himself of the procedures provided hospital employees.

By a single point of error, the Appellant asserts that the trial court erred in granting summary judgment against his claim for deprivation of his liberty interest pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 (1981) because a factual issue as to stigmatizing information disseminated by defendant concerning plaintiff must be decided by a jury.

■ Mr. Brennan was an "at will" employee of the hospital and could be discharged at any time without cause. *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99 (1888). An exception does exist where the sole reason for the discharge is the employee's refusal to perform an illegal act. *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985). Likewise, an exception also exists when an employee is discharged for the sole reason that the employer desires to avoid contributing or paying benefits under an employer's pension fund. *Winters v. Houston Chronicle Publishing Company*, 795 S.W.2d 723 (Tex.1990). In the *Winters* opinion, Justice Gonzalez noted several statutory restrictions placed upon employers in specified areas of employment. None of the statutes apply to the facts in this case.

■ A summary judgment in favor of a hospital in a 42 U.S.C. § 1983 claim by hospital security officers was affirmed in *Wofford v. Glynn Brunswick Memorial Hospital*, 864 F.2d 117 (11th Cir.1989). The order of the trial court noted that the creation and parameters of property rights are determined by state law. Following the holding in *The Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the order granting summary judgment noted that in order to have a property interest protected by procedural due process, a person "must have more than a unilateral expectation of it." *Wofford* at 119. That holding was followed in *Adams v. Bainbridge–Decatur County Hospital Authority*, 888 F.2d 1356 (11th Cir.1989), which also involved a hospital employee. In that case, the Court affirmed a directed verdict against an employee who sued the hospital and its executive director alleging violations of the first and fourteenth amendments and 42 U.S.C. §§ 1981 and 1983. The Court again concluded that an "at-will" employee was not entitled to procedural due process in connection with her termination and had no statutory or constitutionally protected rights which were violated. The Court continued to apply the same reasoning in *Nolin v. Douglas County*, 903 F.2d 1546 (11th Cir.1990) in a case involving a former lieutenant with the Douglas County, Georgia Sheriff's Department who had no property interest in his continued employment.

Applying Texas law, we must conclude that Appellant had no protectable property interest in his position at the hospital and his Section 1983 and constitutional claims must fail.

■ Further, we note that the claim that a fact issue was raised by the response to the motion for summary judgment is not valid. Attached to the response is an affidavit of Judy Johnson concerning her contact with an attorney about representing "a client of mine who had just been fired from Midland Memorial Hospital for taking pictures of Jessica McClure." All of the statements in the affidavit about that conversation with a named attorney is hearsay to which written objection was filed. *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230 (Tex.1962); *El Paso Associates, Ltd. v. J.R. Thurman & Company*, 786 S.W.2d 17 (Tex.App.—El Paso 1990, no writ).

Finally, in his deposition testimony, Mr. Brennan does acknowledge that he did in fact have a hearing with the hospital administrator for the purpose of determining if he had violated any policy and clearing his name. His testimony was:

He [Mr. Branson] asked me if I had anything to say in my own defense. And I said that I had done nothing wrong but that I had informed Reba McClure that I would probably be fired. And he said then you knew you were wrong. And I said no, I just know hospital politics.

He told me to leave the room and sit outside while he made a decision.

That same evening he was suspended from his employment at the hospital.

Point of Error No. One is overruled.

The order of the trial court is affirmed.