SANDS V. WESTMINSTER MANOR 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-92-443-CV





BRETT SANDS, D/B/A SANDS LANDSCAPING,



 APPELLANT


vs.





WESTMINSTER MANOR HEALTH FACILITIES CORPORATION OF TRAVIS

COUNTY,

D/B/A WESTMINSTER MANOR,



 APPELLEE



 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 92-02174, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING


 




 This is an appeal from a final summary judgment rendered against Brett Sands d/b/a
Sands Landscaping ("Sands") in favor of Westminster Manor Health Facilities Corporation of
Travis County, d/b/a Westminster Manor ("Westminster"). Sands had sued Westminster for
breach of contract alleging Westminster had tortiously terminated the contract. We will affirm
the judgment of the trial court.



THE CONTROVERSY



 In October 1988, Sands and Westminster entered into a contract. The contract was
drafted by Sands and took the form of a letter from Sands to an agent of Westminster. It was
written on "Sands Landscaping" stationery. Under the terms of the contract Sands agreed to
provide landscape maintenance services to Westminster for an unspecified length of time. Sands
agreed to "cut, edge, trim, bag grass as needed, prune hedges and remove all weeds from beds"
once a week from March through December, and twice monthly during January and February. 
Sands agreed to fertilize the lawns four times per year and to fertilize the beds and groundcover
twice per year. Sands also agreed to perform a variety of other tasks to insure that the property
was maintained adequately. In return, Westminster agreed to pay Sands $1,325 per month for
performance of the above services. The contract also contained a "Cancellation Agreement"
which stated: "At any time or for any reason either party can cancel this agreement with a thirty
day written notice."

 Sands alleged that in April 1990 an agent of Westminster asked him to cut down
six dead loquat trees on Westminster's property. Sands refused to cut down one of the trees that
he alleges contained a nest of baby grackles and to cut another tree which he maintained protected
the tree containing the grackle nest. Sands did cut down the other four trees.

 Sands discovered after some investigation that grackles are protected under the
Migratory Bird Treaty Act. See 16 U.S.C. §§ 703, 707 (Supp. 1992); see also 50 C.F.R.
§§ 10.12-.13 (1991). He informed Westminster that it would be illegal for him to destroy the
nest. Sands alleged that Westminster insisted that he cut down the trees, but he refused. Sands
further alleged that an agent of Westminster called him on April 12, 1990, to inform him that he
was "fired" for his failure to cut down the loquat trees. Westminster then mailed Sands a
termination letter on April 13, 1990. Pursuant to the contract, Sands continued to perform
services under the contract until May 13, 1990, when the thirty-day notice period expired.

 Sands filed suit against Westminster for wrongful termination of contract in
violation of public policy. Westminster moved for summary judgment on the grounds that: (1)
Sands failed to state a claim upon which relief could be granted; (2) Westminster did not breach
the contract; and (3) Westminster did not owe any duty in tort to Sands. Without specifying the
ground upon which it was based, the trial court rendered summary judgment in favor of
Westminster. Because the trial court did not specify the grounds upon which the judgment was
based, it will be upheld if it was valid on any of the grounds asserted by the movant. See Carr
v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989). 

 Sands brings two points of error. First, Sands contends that there is a genuine issue
of material fact as to whether the sole or principal reason for termination of the contract was his
refusal to perform an illegal act. Second, Sands contends that an independent contractor has a
cause of action for breach of contract when a contracting party wrongfully terminates a contract
because the independent contractor refuses to perform an illegal act.



DISCUSSION



 The standards for reviewing a motion for summary judgment are well established: 
(1) The movant for summary judgment has the burden of showing that no genuine issue of
material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether
there is a disputed material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of
the nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985). The purpose of summary judgment is to eliminate patently
unmeritorious claims or untenable defenses. Swilley v. Hughes, 488 S.W.2d 64, 68 (Tex. 1972);
Olson v. Central Power & Light Co., 803 S.W.2d 808, 811 (Tex. App.--Corpus Christi 1991, writ
denied). Questions of law may be properly resolved by summary judgment. Wisenbarger v.
Gonzales Warm Springs Rehabilitation Hosp., Inc., 789 S.W.2d 688, 691 (Tex. App.--Corpus
Christi 1990, writ denied).

 The dispositive issue in this appeal is whether Sands has successfully stated a cause
of action upon which relief may be granted. The remaining two grounds for the summary
judgment necessarily depend upon the resolution of this legal question. We will assume that the
sole reason for termination was his refusal to perform an illegal act. 

 Sands is urging this Court to extend the protection of the public policy exception
to the employment at-will doctrine announced in Sabine Pilot Service, Inc. v. Hauck, 687 S.W.2d
733, 735 (Tex. 1985), to cover contractual relationships between independent contractors and
those parties contracting for their services. The court in Sabine Pilot, emphasizing the narrowness
of the exception it created, stated, "That narrow exception covers only the discharge of an
employee for the sole reason that the employee refused to perform an illegal act." Id. (emphasis
added). Athough acknowledging this narrow exception, the supreme court continues to recognize
the validity of the employment at-will doctrine announced over one hundred years ago in East Line
& R.R.R. Co. v. Scott, 10 S.W. 99, 102 (Tex. 1888). See Winters v. Houston Chronicle
Publishing Co., 795 S.W.2d 723, 724 (Tex. 1990). In Winters, the court refused to recognize
an exception to the at-will doctrine where an employee was fired for reporting his employer's
illegal activities; rather it reaffirmed the continuing validity of this doctrine. Id.

 Sands is not seeking a new exception to the at-will doctrine. He is seeking to
include a whole new class of persons within an existing exception. He argues that independent
contractors should not have their contracts terminated for the sole reason that they refused to
perform an illegal act at the request of the other party to the contract. (1) In effect, Sands is asking
this Court to amend the cancellation clause which he drafted. Although the contract allows either
party to terminate the contract for any reason upon thirty-days' written notice, Sands wants this
Court to add the following condition to the cancellation agreement: "Except if the reason for
termination is failure to perform a requested illegal act." We decline to rewrite the contract to
which the parties assented.

 In a previous case before this Court, the plaintiff sought an exception to the
employment at-will doctrine based on the important public-policy grounds of preserving the
privacy rights of employees. Jennings v. Minco Technology Labs, Inc., 765 S.W.2d 497 (Tex.
App.--Austin 1989, writ denied). This Court said that the plaintiff was seeking to enlarge her
contractual rights with the common law right of privacy and to diminish those of the company for
which she was working. Id. at 499. In rejecting the plaintiff's claim, we reasoned that there was
a vast and obvious difference between creating a cause of action for wrongful discharge and
creating a "particular contract relation, without the mutual assent of the parties, to be enforced
by all the powers of the state." Id. at 501 n.3. Acknowledging the continuing validity of the
employment at-will doctrine, we stated:



Sabine Pilot implies, without any doubt, that lower courts are not licensed in that
opinion to modify the Supreme Court's earlier decision in Scott. . . . The Supreme
Court would have given clearer indications of its intention had it really meant in
Sabine Pilot to free lower courts of their duty to obey the rule of contract law laid
down in Scott. . . .



Id. at 500-02. 

 We decline Sands' invitation to decide whether the public policy behind the Sabine
Pilot illegality exception outweighs the public policy behind the freedom to independently
contract. Such a question is more appropriately addressed to the supreme court or to the
legislature. "As neither the Texas Legislature nor the Texas Supreme Court has established the
State's position in this sensitive area, the Court must exercise judicial restraint, and refrain from
creating this new right of recovery." Maus v. National Living Centers, Inc., 633 S.W.2d 674,
676 (Tex. App.--Austin 1982, writ ref'd n.r.e.). Accordingly, we overrule Sands' second point
of error. Our resolution of this point of error precludes the necessity of reaching Sands' first
point of error.



CONCLUSION


 For the reasons stated above, the judgment of the trial court is affirmed.



 Mack Kidd, Justice

[Before Justices Powers, Kidd and B. A. Smith]

Affirmed

Filed: April 14, 1993

[Do Not Publish]

1.   At least three other jurisdictions have been faced with the issue of extending exceptions
to the employment at-will doctrine to the realm of independent contractors. All have refused
to do so. See New Horizons Elec. Mktg, Inc. v. Clarion Corp., 203 Ill. App. 3d 332, 561 N.E.2d
283 (Ill. App. Ct. 1990); Wilmington v. Harvest Ins. Cos., 521 N.E.2d 953 (Ind. Ct. App. 1988);
Abrahamson v. NMC Hospitals, Inc., 195 Cal. App. 3d 1325, 241 Cal. Rptr. 396 (Cal. Ct. App.
1987).