TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-96-00346-CV







Ran Ken, Inc., Appellant



v.



Cindy Schlapper, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 95-04999, HONORABLE FRED A. MOORE, JUDGE PRESIDING 






 The opinion issued herein on October 30, 1997, is withdrawn, and the following is filed in
lieu thereof.

 Cindy Schlapper, appellee, sued Ran Ken, Inc. ("Ran Ken"), appellant, for wrongful
discharge. At trial, the jury found that Schlapper was fired from her job for the sole reason that she
attempted in good faith to find out whether she was being asked by Ran Ken, her employer, to perform
an illegal act. Based on the verdict, the trial court rendered judgment that Schlapper recover from Ran Ken
$143,000 in actual and exemplary damages, plus interest and court costs.

 On appeal, Ran Ken argues that the trial court erred in: (1) the submission and wording
of jury question two, asking whether Schlapper was discharged for inquiring about the legality of an act Ran
Ken ordered her to perform; (2) failing to instruct the jury on the definition of "sole reason"; (3) awarding
tort damages for a cause of action sounding in contract; (4) submitting a jury question asking whether Ran
Ken acted willfully and maliciously; and (5) admitting testimony regarding attorney's fees. Ran Ken also
argues that the evidence is legally and factually insufficient to support: (1) the finding that Schlapper was
discharged solely for inquiring whether she was being asked to perform an illegal act; (2) damages for
emotional distress; (3) exemplary damages; and (4) attorney's fees. In three cross-points, Schlapper
argues the trial court erred by: (1) failing to submit a proposed jury question; (2) excluding her statutory
demand letter; and (3) applying "sole reason" as the standard of causation in question one. We will address
only Ran Ken's first point of error regarding the jury question asking whether Schlapper was discharged
for inquiring into the legalities of an act; we will also address Schlapper's first and third cross-points. We
will sustain Ran Ken's first point and reverse the trial court's judgment.


FACTUAL AND PROCEDURAL BACKGROUND


 Ran Ken is a corporation that runs a chain of restaurants and bars, including Chelsea Street
Pubs. Ran Ken holds a "mixed beverage permit," which authorizes its Texas restaurants to possess and
sell mixed beverages, wine, and beer for consumption on the licensed premises. See Tex. Alco. Bev. Code
Ann. § 28.01 (West 1995). Cindy Schlapper was employed by Ran Ken as its advertising director. An
"at will" employee, Schlapper was responsible for the advertising and promotion of the corporation's
twenty-four stores.

 In 1994, a nationwide contest was held among the managers of Ran Ken's various Chelsea
Street Pubs. The contest was conducted in conjunction with Remy-Amerique, a New York liquor
company. Remy-Amerique holds a "nonresident seller's permit," which authorizes it to ship liquor into
Texas through sales to permittees who are authorized to import liquor into the state. See Tex. Alco. Bev.
Code Ann. § 37.01 (West 1995). Pursuant to the rules of the contest, the manager of the restaurant that
sold the most margaritas containing Cointreau, a Remy-Amerique product, won a free trip to Las Vegas. 
The first-prize winner was the manager of a restaurant in Odessa, Texas.

 In January 1995, Robert Gilleland, Ran Ken's vice-president for Chelsea Street Pubs,
asked Schlapper to prepare an invoice so Ran Ken could be reimbursed for the trip to Las Vegas. 
Corporate officials of both Ran Ken and Remy-Amerique were "concerned" that, under Texas law, Remy-Amerique might be prohibited from paying for the trip. As a result, Gilleland instructed Schlapper to
prepare an invoice for $631.80 to be sent to Remy-Amerique and to indicate on the invoice that it was for
table-top advertising or "table tents." (1) Unknown to Schlapper, Remy-Amerique knew the true basis of the
invoice. Knowing Ran Ken had not prepared any table tents, and believing that, under Texas law, a liquor
company could not pay for the cost of a promotion, Schlapper told Gilleland she had a problem with
creating such an invoice. He recommended she speak with Howard Crohn, Ran Ken's senior vice-president. When Schlapper spoke with Crohn, he told her she must prepare the invoice. She expressed
her concern about generating such a document and asked him, "Exactly what are the legalities of doing
this?" Schlapper testified that after she made this comment Crohn became very angry and responded that
it was none of her concern. Schlapper did not further investigate the actual legality of the invoice. Rather,
in an effort to appease Crohn, she created a blank invoice on the computer for someone else to complete
and gave it to Crohn. Another employee eventually completed the invoice. When it was finally sent to
Remy-Amerique, the invoice stated that it was for "promotional materials."

 About a month later, Schlapper was terminated. Schlapper sued Ran Ken for wrongful
termination, contending she was fired for the sole reason that she refused to perform an illegal act, and for
attempting in good faith to find out whether she was being asked to perform an illegal act. Schlapper
contended that her preparation of the invoice would have violated sections 108.05 and 108.06 of the Texas
Alcoholic Beverage Code, section 32.32 of the Texas Penal Code, and/or Title 18, section 1341 of the
United States Code. (2)

 The trial court submitted two liability questions to the jury. The first question, based on
Sabine Pilot Service, Inc. v. Hauck, 687 S.W.2d 733 (Tex. 1985), stated: "Did Ran Ken, Inc. discharge
Cindy Schlapper for the sole reason that she refused to perform an illegal act?" The jury answered "no"
to this question. Question two stated: "Did Ran Ken, Inc. discharge Cindy Schlapper for the sole reason
that she attempted in good faith to find out whether she was being asked to perform an illegal act?" The
jury answered "yes" to question two. Based on the jury's answer to question two, the trial court rendered
judgment in favor of Schlapper for actual damages, exemplary damages, court costs, and interest. Ran Ken
appeals.


DISCUSSION


 In its first point of error, Ran Ken argues the trial court erred in submitting question two to
the jury, because it does not support a cause of action under Texas law. We must first decide whether the
cause of action implicit in question two, by prohibiting an employer from discharging an at-will employee
when the employee inquires about or investigates the lawfulness of an act, expands the supreme court's
holding in Sabine Pilot.

 The long-standing rule in Texas is that employment for an indefinite term may be terminated
at will and without cause. Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483, 489 (Tex. 1991);
Winters v. Houston Chronicle Pub. Co., 795 S.W.2d 723, 724 (Tex. 1990); East Line & R.R.R. v.
Scott, 10 S.W. 99, 102 (Tex. 1888). The legislature has created a number of restrictions and exceptions
to the at-will doctrine. See Winters, 795 S.W.2d at 724 & n.1. The Texas Supreme Court, however, has
created only one exception to the general rule, allowing a cause of action for wrongful termination when
the employee has been discharged for the sole reason that the employee refused to perform an illegal act. 
See Sabine Pilot, 687 S.W.2d at 735.

 In Sabine Pilot, the employee was a deckhand for Sabine. He was instructed that one of
his duties was to pump the bilge water out of the boat on which he was working into the water. Id. at 734. 
After seeing a posted notice stating that such action was illegal under federal law, and after calling the coast
guard to confirm this fact, the employee refused to comply with his employer's order. As a result, he was
terminated. Id. In response, the supreme court created a "very narrow" exception to the employment-at-will doctrine: an employee cannot be terminated if the sole reason for the termination is the employee's
refusal to perform an illegal act that would subject the employee to criminal liability. Id. at 735. The
Sabine Pilot exception applies only if the plaintiff was forced to choose between committing a criminal act
and being discharged. See Winters, 795 S.W.2d at 724; see also Willy v. Coastal States Management
Co., 939 S.W.2d 193, 197 (Tex. App.--Houston [1st Dist.] 1996, writ granted); Berry v. Doctor's
Health Facilities, 715 S.W.2d 60, 62 (Tex. App.--Dallas 1986, no writ). Since Sabine Pilot, the
supreme court has continued to stress the narrowness of the exception. See Texas Dep't of Human
Servs. v. Hinds, 904 S.W.2d 629, 633 (Tex. 1995); Wornick Co. v. Casas, 856 S.W.2d 732, 735 (Tex.
1993); Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483, 489 (Tex. 1991).

 Schlapper contends question two is not an expansion of Sabine Pilot. Schlapper relies
on Johnston v. Del Mar Distributing Co., 776 S.W.2d 768 (Tex. App.--Corpus Christi 1989, writ
denied), as support for the trial court's submission of question two. In Johnston, the plaintiff's work duties
included packaging items for shipment. Id. at 769. On one occasion, her supervisor instructed her to
package a semi-automatic weapon for delivery, but to label the package "fishing gear." The plaintiff
contacted the Bureau of Alcohol, Tobacco, and Firearms about whether this act was legal. She was
terminated "a few days after" her inquiry. Id. The Corpus Christi court did not discuss the actual legality
of mislabeling the package, but stated: 


[S]ince the law recognizes that it is against public policy to allow an employer to coerce
its employee to commit a criminal act in furtherance of its own interest, then it is necessarily
inferred that the same public policy prohibits the discharge of an employee who in good
faith attempts to find out if the act is illegal.


Johnston, 776 S.W.2d at 771. The court further held that, when the employer discharges the employee
for contacting a regulatory agency to determine whether a requested act is illegal, the employee must prove
she had a good faith, reasonable belief that the requested act might be illegal. Id. at 772. The employee
need not prove the requested act was actually illegal. Id.

 We disagree that question two, based on Johnston, is not an expansion of Sabine Pilot. 
An employee alleging a Sabine Pilot cause of action must prove that the sole reason for her discharge was
her refusal to perform an illegal act. Sabine Pilot, 687 S.W.2d at 735. Necessary to the employee's
proof is evidence that the act could have resulted in criminal penalties against the employee. See id. The
element of criminal penalties must be conclusively proved, even though the trial judge must determine
whether a statute carrying a criminal penalty is involved. See id. at 736 (Kilgarlin, J., concurring). Thus,
an employee who has not yet refused to perform a requested act or who cannot show that performance
of the requested act would result in criminal penalties against her will not meet the burden of proof
necessary to succeed in a Sabine Pilot cause of action.

 In the present case, however, the jury refused to find in answer to question one that
Schlapper's discharge resulted from her refusal to perform an illegal act, and question two does not require
actual illegality. (3) In essence, therefore, Schlapper asserts that Sabine Pilot would subject an employer to
civil liability for discharging an at-will employee when the employee refuses to perform a legal act, simply
because the employee questions or seeks to investigate its legality. Such a holding would enlarge the
exception recognized in Sabine Pilot. Consider, for example, the following scenario: An employer spends
thousands of dollars obtaining a legal opinion attesting to the lawfulness of a particular act the employer
wants accomplished. After receiving the opinion, the employer proceeds to ask one of her employees to
complete the task. The employee, however, refuses to comply with the employer's request until the
employee herself has had an opportunity to investigate the legality of the act. According to Schlapper, as
long as the employee is making a "good faith" attempt to find out if the requested act is legal, she cannot
be fired, or, if she is fired, can recover damages for wrongful discharge.

 The public policy behind the Sabine Pilot exception is to deter the violation of criminal
laws. See Sabine Pilot, 687 S.W.2d at 735. Question two, however, goes beyond merely deterring
crime. Sabine Pilot designedly created a "narrow" exception to the employment-at-will doctrine to
prohibit the discharge of an employee for the sole reason that the employee refused to perform an illegal
act. Sabine Pilot, 687 S.W.2d at 735. Because question two would impose liability on an employer who
fires an employee for refusing to perform (or even for investigating) a legal act, it goes beyond this
exception and could conceivably result in "employee interference with legitimate interests of responsible,
law-abiding employers in making ordinary managerial decisions." See Winters v. Houston Chronicle
Publishing Co., 795 S.W.2d 723, 732 (Tex. 1990) (Doggett, J., concurring).

 Furthermore, recognizing an exception to the employment at-will doctrine for discharging
an at-will employee when the employee refuses to perform a legal act before assuring herself of the act's
lawfulness could create a plethora of additional legal and factual issues not contemplated by Sabine Pilot. 
For example, adopting such an exception would inevitably require a determination of what constitutes a
reasonable course and duration of the employee's investigation: What is a reasonable amount of time to
investigate the action's legality? What if the person that the employee seeks to contact is on vacation or
otherwise unavailable? Is a good-faith doubt in the legality of the action sufficient, or must the employee
affirmatively hold a good-faith belief that the action is illegal? Is good faith determined by a subjective or
objective standard, or by some combination of the two? What is a reasonable manner of investigation? 
Is an off-the-cuff inquiry to the employer sufficient? Does the employee have the right to call an attorney
to research the issue? If so, does the employee have to call the company's attorney or can he call another
attorney? Who must pay the attorney's fees? These complexities and practical difficulties, while not
insurmountable, make it even more evident that question two goes beyond the bright-line rule created in
Sabine Pilot.

 We express no disagreement with the motive behind the submission of question two, nor
do we deprecate the worthiness of the cause of action it represents. Irrespective of the merits of such a
right of action, however, the supreme court explicitly stated in Sabine Pilot that it was creating only a
narrow exception to the employment-at-will doctrine. In light of that clearly expressed policy, we believe
any expansion of Sabine Pilot must be made by the supreme court, not by an intermediate appellate court
whose job it is to follow, as conscientiously as it can, the law as pronounced by the court of last resort. 
See Maus v. National Living Centers, Inc., 633 S.W.2d 674, 675 (Tex. App.--Austin 1982, writ ref'd
n.r.e.). As Justice Powers, writing for this Court, has stated:


 Sabine Pilot implies, without any doubt, that lower courts are not licensed in that opinion
to modify the Supreme Court's earlier decision in [East Line & R.R.R. Co v.] Scott--that
lower courts are not free to create additional exceptions analogous to the "very narrow
exception" created in Sabine Pilot itself. The Court's emphasis on the narrowness of the
new exception forecloses any reasonable inference that the precepts of the "at will
doctrine" must give way when the advocates of any public policy may claim or even show
that it is adversely affected by the doctrine.


Jennings v. Minco Technology Labs, Inc., 765 S.W.2d 497, 500-01 (Tex. App.--Austin 1989, writ
denied). While courts of appeals are often called on to recognize new exceptions to legal principles, we
must be loath to ignore a deliberate and express position enunciated by a higher court. The exception to
the employment-at-will doctrine recognized by the supreme court in Sabine Pilot falls into that category. 
See Hancock v. Express One Int'l, Inc., 800 S.W.2d 634, 637 (Tex. App.--Dallas 1990, writ denied). 
Accordingly, we conclude it was error for the trial court to render judgment based on the jury's answer
to question two. See Boatland of Houston, Inc. v. Bailey, 609 S.W.2d 743, 750 (Tex. 1980) (improper
submission of charge questions constitutes reversible error when harm is suffered by the opposing party). 
We sustain point of error one.

 Having sustained Ran Ken's first point of error, we need not address its remaining points
of error or Schlapper's second cross-point. We will, however, address Schlapper's first and third cross-points, which relate to her requested jury submission and the trial court's submission of the jury question
relating to the Sabine Pilot cause of action.

 In her first cross-point, Schlapper contends the trial court erred by failing to submit a jury
question allowing Schlapper to recover if she was discharged solely for refusing to perform a legal act that
she in good faith believed to be illegal. Specifically, Schlapper requested that the trial court expand the
supreme court's holding in Sabine Pilot to include situations where an employee was fired for refusing to
perform an act that was not in fact illegal, but which the employee believed in good faith to be illegal,
irrespective of any inquiry or investigation. Such a doctrine would, however, require as much an expansion
of Sabine Pilot as question two. As discussed above, we believe that is beyond our authority in the
present circumstances. We overrule Schlapper's first cross-point.

 In her third cross-point, Schlapper argues that the "sole reason" standard of causation
submitted to the jury as part of question one is wrong. The trial court's submission of "sole reason" as the
level of causation is based squarely on the supreme court's holding in Sabine Pilot. See Sabine Pilot, 689
S.W.2d at 735. From our foregoing discussion, it is apparent we have no authority to overrule the supreme
court. Accordingly, we cannot say the trial court erred in submitting the jury questions with "sole reason"
as the standard of causation. We overrule Schlapper's third cross-point.


CONCLUSION


 Having sustained Ran Ken's first point of error and overruled Schlapper's relevant cross-points, we hold that the trial court erroneously submitted question two, on which Ran Ken's liability was
based. Accordingly, we reverse the judgment of trial court and render judgment that Schlapper take
nothing.



 

 J. Woodfin Jones, Justice

Before Justices Powers, Jones, and Kidd

Reversed and Rendered

Filed: January 15, 1998

Publish
1. Although the cost of the trip to Las Vegas was only $630, Schlapper was instructed to create
the invoice for $631.80 to "make it look real."
2. Sections 108.05 and 108.06 of the Texas Alcoholic Beverage Code state:


Section 108.05. Allowance for Advertisement or Distribution


 No manufacturer or distributor, directly or indirectly, or through a subsidiary,
affiliate or agent, employee, officer, director or firm member, may pay or make an
allowance to a retail dealer for an advertising or distribution service.


Section 108.06. Prizes and Premiums


 No manufacturer or distributor, directly or indirectly, or through a subsidiary,
affiliate or agent, employee, officer, director or firm member, may offer a prize,
premium, gift, or other inducement to a dealer in or consumer of brewery products.


Tex. Alco. Bev. Code Ann. §§ 108.05, .06 (West 1995).


 The Texas Penal Code provision states: "A person commits an offense if he intentionally or
knowingly makes a materially false or misleading written statement to obtain property or credit for himself
or another." Tex. Penal Code § 32.32(b) (West 1994). The United States Code provision, which
prohibits mail fraud, is similar in content to section 32.32(b). See 18 U.S.C.A. § 1341 (West Supp. 1997).
3. The creation and forwarding of the invoice, though dishonorable at best, appears not to be
"illegal" in the sense of giving rise to criminal penalties. Sections 108.05 and 108.06 of the Alcoholic
Beverage Code seem to apply only to manufacturers and distributors of beer, and thus did not apply to
either Ran Ken or Remy-Amerique. See, e.g., Tex. Alco. Bev. Code Ann. § 1.04(17) (West 1995). 
Section 32.32 of the Penal Code likewise appears not to apply because all relevant persons at Remy-Amerique were aware that the true basis of the invoice was the cost of the Las Vegas trip; accordingly, Ran
Ken apparently did not ask Schlapper to make a "materially false or misleading" statement to Remy-Amerique. The federal mail-fraud statute is inapplicable for essentially the same reason. Because of the
jury's negative answer to question one, however, the actual illegality of either the act Schlapper was asked
to perform or the act later performed by Ran Ken is not material to our decision.



ine Pilot as question two. As discussed above, we believe that is beyond our authority in the
present circumstances. We overrule Schlapper's first cross-point.

 In her third cross-point, Schlapper argues that the "sole reason" standard of causation
submitted to the jury as part of question one is wrong. The trial court's submission of "sole reason" as the
level of causation is based squarely on the supreme court's holding in Sabine Pilot. See Sabine Pilot, 689
S.W.2d at 735. From our foregoing discussion, it is apparent we have no authority to overrule the supreme
court. Accordingly, we cannot say the trial court erred in submitting the jury questions with "sole reason"
as the standard of causation. We overrule Schlapper's third cross-point.


CONCLUSION


 Having sustained Ran Ken's first point of error and overruled Schlapper's relevant cross-points, we hold that the trial court erroneously submitted question two, on which Ran Ken's liability was
based. Accordingly, we reverse the judgment of trial court and render judgment that Schlapper take
nothing.



 

 J. Woodfin Jones, Justice

Before Justices Powers, Jones, and Kidd

Reversed and Rendered

Filed: January 15, 1998

Publish
1.