Allen HOPKINS, Plaintiff–Appellee,
Cross–Appellant,

v.

John E. STICE and Texas Dept. of
Corrections, Defendants,

John E. Stice, Defendant–Appellant,
Cross–Appellee.

No. 89–6104.

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1990.

Order on Denial of Rehearing
Dec. 11, 1990.

Ester L. Hajar, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for defendant-appellant-cross-appellee.

Larry R. Daves, San Antonio, Tex., for plaintiff-appellee-cross-appellant.

Van Os, Deats, Rubinett & Owen, Austin, Tex., for intervenor, Texas State Employees Union, AFL–CIO.

Before RUBIN, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM,
Circuit Judge:

John E. Stice, assistant director of support services for the Texas Department of Corrections, appeals a judgment entered upon a jury verdict, assessing damages against him in his individual capacity for deprivation of the property and liberty interests of Allen Hopkins in violation of the due process clause of the Constitution and 42 U.S.C. § 1983. Hopkins cross appeals the district court's decision to set aside the jury's award of damages for loss of future earnings and the district court's failure to order injunctive relief. We find no deprivation of a liberty interest and that this defendant enjoys qualified immunity for any deprivation of a property interest. We reverse.

## I.

The Texas Department of Corrections (TDC) hired Hopkins as a heavy equipment supervisor in 1966, and he became general project superintendent in 1985.

In 1986, the Internal Affairs Division of the TDC began investigating reports that TDC employees were dumping x-ray machines, dump truck beds, tools, and other materials in landfills with the intent of later selling them. The TDC dispatched Stice to the Northern Region to look into the reports. In early November of 1986, Stice received an Internal Affairs report finding that materials had been buried in violation of TDC policy but not for the purpose of theft. Stice then met with Hopkins. He read a portion of the report to him but refused to let him see it believing the report to be confidential. Hopkins denied any responsibility for the dumping. Stice told Hopkins that he was recommending that the Director discharge Hopkins and suspended him without pay in the interim. He also informed Hopkins that he could file a grievance and provided him with a copy of the grievance procedure.

TDC's legal department recommended suspension, demotion and probation instead of termination. On December 19, 1986, O.L. McCotter, the director of the TDC, imposed a thirty day suspension without pay, a demotion, and one year's probation.

Hopkins is currently employed by the TDC as an assistant project superintendent. In January of 1987, Hopkins filed a grievance which went directly to the director's office. The acting director denied the grievance without granting Hopkins a hearing. An employee in the TDC's Public Information Office, released Hopkin's name and the recommended disciplinary action to the media in violation of TDC policy.

Hopkins sued TDC and Stice, alleging first that the suspension, demotion, and probation deprived him of his property interest in his position at the TDC, and second, that the release of related information to the news media deprived him of a liberty interest in his reputation. The district court dismissed the claims against the TDC and Stice in his official capacity. After a four day trial, the jury found for Hopkins and awarded damages for past and future mental anguish, actual damages, lost future earnings, and punitive and nominal damages. The district court set aside nominal damages and future lost earnings, but otherwise entered judgment on the verdict for Hopkins on October 16, 1989. Stice now appeals to this court, and Hopkins cross-appeals.

## II.

Hopkins must persuade that Stice deprived him of a protectible property or liberty interest without due process of law, and, because Stice as a public official is protected by qualified immunity, that Stice violated a clearly established constitutional right of which a reasonable person would have been aware. We find that Hopkins failed to overcome Stice's qualified immunity defense on the property interest claim, and that he failed to show a causal connection between Stice's conduct and any injury to his liberty interest.

■ Public officials are, of course, immune from liability unless their conduct violates a clearly established constitutional or statutory norm, a question not necessarily answered by the certainty of the legal rule. An official enjoys qualified immunity

if a reasonable official would be left uncertain of the application of the standard to the facts confronting him. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

■ We cannot say that Stice's conduct deprived Hopkins of any constitutional right clearly established. This is because Hopkins' claimed property interest under state law rested on uncertain law, at best. The relevant statute arguably established an at-will employment relationship between the TDC and its employees. Tex.Rev.Civ. Stat.Ann. Art. 6166j, which has not been amended since its adoption in 1927, states:

> The duty of the director shall extend to the employment and discharge, with the approval of the Department, of such persons as may be necessary for the efficient conduct of the correctional system.

Although Article 6166j does not expressly create an at-will employment relationship, Texas precedents suggest that it should be interpreted in favor of the state. *See Batterton v. Texas General Land Office*, 783 F.2d 1220, 1223 (5th Cir.1986); *State v. Standard*, 414 S.W.2d 148, 153 (Tex.1967); and *Empire Gas and Fuel Co. v. State*, 47 S.W.2d 265, 272 (Tex.1932). In addition, the Texas legislature enacted Article 6166j at a time when at will employment was already firmly established in Texas. *See Sabine Pilot Service v. Hauck*, 687 S.W.2d 733, 734 (Tex.1985); and *East Line & R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99, 102 (1888).

■ But even if Article 6166j did not mandate at-will employment, the relevant case law failed to clarify when a "mutually explicit understanding" of continued employment existed. Hopkins argued at trial that an obligation to dismiss only for cause arose from several TDC practices, including representations made by TDC officials during hiring, the distinction between probationary and permanent employees, disciplinary and evaluation procedures set out in an employee manual, and the TDC's re-

tirement fund. However, the oral statements did not clearly rise to the level of an oral contract. *Compare United Transportation Union v. Brown*, 694 S.W.2d 630 (Tex.App.—Texarkana 1985, writ ref. n.r. e.); and *Johnson v. Ford Motor Co.*, 690 S.W.2d 90 (Tex.App.—Eastland 1985, writ ref. n.r.e.). The employee manual was at best ambiguous—the procedures that it described could be interpreted either as granting a right to continued employment absent cause to dismiss or conditioning removal on compliance with certain procedures.[1] *See Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976); *Henderson v. Sotelo*, 761 F.2d 1093, 1097 (5th Cir.1985); *Wells v. Hico Independent School District*, 736 F.2d 243, 253 n. 13; and *Christian v. McKaskle*, 649 F.Supp. 1475, 1479 (S.D.Tex.1986) (finding specifically that the TDC manual is ambiguous, but concluding that it should be interpreted as only a grant of procedural rights in light of the long-established presumption of at-will employment in Texas). The same can be said about the distinction between probationary and permanent employees. See *Bishop*, 426 U.S. at 345, 96 S.Ct. at 2077–78. The contention that the retirement fund created an obligation to only dismiss for cause is without merit.

In sum, whether Hopkins enjoyed a property interest under state law in his position, putting aside the differences between a demotion and termination, sufficient to trigger due process protection was equivocal at best. Stice was entitled to immunity from the damage claim.

■ As for the liberty interest, Hopkins produced no evidence that Stice published or caused the publication of information related to the investigation of Hopkins. Stice had supervisory authority over the investigation and Hopkins, but he did not have supervisory authority over the person who improperly released Hopkin's name and the recommended disciplinary action to

---

1. Section 1.37 of the manual lists a number of causes justifying disciplinary actions, but does not make these causes exclusive. Section 1.42 of the manual sets forth the grievance procedure. The preamble to the procedure states that

the purpose of the TDC is to promote harmonious relations between the TDC and its employees; the preamble does not purport to create any rights in employees. *Compare Wells*, 736 F.2d at 254.

**1032**

the news media. There was no evidence that Stice even knew that person released the information before its publication. Finally, there is no evidence that Stice had any role in denying Hopkins a name clearing hearing—a critical element of his claim.

The judgment is REVERSED.

ON PETITION FOR REHEARING

Dec. 11, 1990

Before RUBIN, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

IT IS ORDERED that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied. Our denial of Hopkins' due process claims is consistent with the precedents and authorities now cited. We also note that Hopkins never properly raised any state law claims.