United States Court of Appeals,

Fifth Circuit.

No. 92-4117.

Kevin S. MOULTON, Plaintiff-Appellant,

v.

CITY OF BEAUMONT, et al., Defendants-Appellees.

May 20, 1993.

Appeal from the United States District Court For the Eastern District of Texas.

Before WISDOM and DUHÉ, Circuit Judges and HAIK[*], District Judge.

SDOM, Circuit Judge.

In this case a city employee in Texas appeals a district court's directed verdict against him on the issue of whether he had a protected property interest in his employment. The district court found that the employee did not have a property interest in his employment as a matter of law. Consequently, the court directed a verdict against the employee in his suit for an alleged violation of substantive due process rights that stemmed from his termination. We affirm.

I.

The plaintiff, Kevin Moulton, worked for the City of Beaumont,[1] from January 1985 to June 1989 when he was fired. Moulton was originally hired as the Personnel Director. After serving two years in this capacit y, in February 1987, his duties were changed to those of a personnel analyst although salary remained the same. Around this time, Max Patterson was assigned responsibility over the Personnel Division. In July 1987, Patterson evaluated Moulton, identified deficiencies in his performance, and detailed the improvements Moulton was expected to make. Eventually, in 1989, Patterson determined that Moulton could not effectively handle his job. By memo on June 16, 1989, Patterson notified Moulton that his performance had fallen short of what was expected of him and

[*]District Judge of the Western District of Louisiana, sitting by designation.

[1]In addition to suing the City, Moulton sued the City Manager, his two supervisors, and the Grievance Committee members individually.

that he would be terminated on June 30, 1989.

Moulton immediately objected to Patterson's decision. Following standard procedure the City provides, Moulton received a hearing before a Grievance Committee. The panel was made up of two members selected by the City Manager and one member selected by Moulton. After more than five days of testimony, the committee recommended that Moulton's termination be upheld. This recommendation was forwarded to the City Manager for final determination. After meeting with Moulton and reviewing the information, the City Manager decided to accept the Committee's recommendation and uphold the termination.[2]

When Moulton was first hired in 1985, the City gave him an employment manual originally adopted in 1977 ("the 1977 manual"). This manual provides that "discipline will be applied only for cause and, even then, only according to accepted practices and within the limitations of the law".[3] The city revised the manual some time after Moulton was employed but well before he was terminated.[4] The revised manual omitted the "for cause" language present in the 1977 manual.

In addition to revising the manual, the City inserted a disclaimer on the first page. The disclaimer states "[t]he information which is contained in this policy does not in any way constitute a contract.... The City of Beaumont reserves the right to [change the manual] without notice".[5] Interestingly, Moulton drafted this disclaimer and suggested that it be added to the manual. According to Moulton, the City never formally adopted the disclaimer.[6]

As a result of his termination, Moulton filed a civil suit in the Eastern District of Texas. He alleged that the City wrongfully terminated him because of race and national origin discrimination,

---

[2]The City Manager offered to transfer Moulton or to allow him to resign as an alternative to his being fired. Moulton rejected this offer.

[3]Plaintiff's Exhibit No. 57, p. 25.

[4]The record is unclear as to the exact date on which the manual was revised. It appears that Moulton began revising it within eight weeks of his starting date in 1985.

[5]Defendant's Exhibit No. 1, p. 1.

[6]The disclaimer is not dated and does not have the usual indicia of formally adopted revisions to the manual. Moulton argues that the question of whether the disclaimer was or was not adopted by the City is a question of fact that should have been left to the jury to decide.

gender discrimination, age discrimination, and that this termination constituted a denial of procedural and substantive due process and equal protection in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution. Over the course of the seven day jury trial, Moulton abandoned his discrimination claims. In addition, he abandoned his procedural due process claim. At the close of the trial the only claims that remained were the claims of denial of substantive due process and of equal protection. The district court found that Moulton had no property interest in his employment as a matter of law and consequently directed a verdict in favor of the City and the individual defendants denying Moulton's due process claim. The court denied the equal protection claim as well. Moulton appeals only the denial of the substantive due process claim.

## II.

We review de novo the question whether the district court erred in finding that Moulton had no property interest in his employment as a matter of law.

To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious.[7] Because the district court issued a directed verdict based on its finding that Moulton lacked a property interest in his employment, we address only the first prong of this test.

In *Bishop v. Wood,*[8] the Supreme Court held that a property interest in employment may be created by ordinance or implied contract. In any event, the existence of such an interest must be determined by reference to state law.[9] Here, we must look to Texas law to determine whether a property right was created. Texas is an employment-at-will state.[10] Absent a specific contract to the

---

[7]*Honore v. Douglas,* 833 F.2d 565, 568 (5th Cir.1987); *see also Regents of University of Michigan v. Ewing,* 474 U.S. 214, 220-23, 106 S.Ct. 507, 510-12, 88 L.Ed.2d 523 (1985).

[8]426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

[9]*Id.*

[10]*Zimmerman v. H.E. Butt Grocery Co.,* 932 F.2d 469, 471 (5th Cir.1991), *cert. denied ---U.S. ----,* 112 S.Ct. 591, 116 L.Ed.2d 615 (1991); *East Line & Red River R.R. Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888).

contrary, employment contracts are terminable at will by either party.[11]  To prevail, Moulton must therefore show some sort of contract fitting this exception.

Because there was no written contract for employment between the City and Moulton, there are only two potential sources for such a contract:  The City Charter and the employee manual.  The Charter provides in pertinent part:

> [The City Manager has the power to a]ppoint and remove all heads of departments and all subordinate officers and employees of the City except as otherwise provided by this Charter and except as he may authorize the head of a department or office to appoint and remove subordinates in such department or office.  The decision of the City Manager or other appointing officer shall be final and there shall be no appeal therefrom to any other office, body or court whatsoever.[12]

In *Henderson v. Sotelo,*[13] this Court reviewed a similar charter provision[14] and held that absent any "for cause"[15] language, this type of charter created no property interest.[16]  Moulton argues that this case is distinguishable on the basis that the charter which it considered included language that could arguably have been construed as "at will" language.  This argument is unconvincing.  The *Henderson* holding rests on the charter's *lack* of "for cause" language, not its inclusion of possible "at will" language.  Thus, *Henderson* does in fact support the City's contention that the Charter does not create a property interest in employment based on the undisputed fact that the Charter does not contain any "for cause" language.[17]

This leaves the employee manual alone as a possible source for the alleged property right.  The 1977 manual provided:

---

[11]*Id.*

[12]Defendant's Exhibit No. 2, p. 13.

[13]761 F.2d 1093 (5th Cir.1985).

[14]The Charter stated in pertinent part:  "[The City Manager] shall ... appoint and/or remove all department heads and other key city administrative employees ... with the advice and consent of the Commission....  [A]ll appointive officers and employees shall be subject to peremptory discharges as herein provided."

[15]"for cause" is used to indicate that the employee will not be fired unless for cause.

[16]*Henderson,* 761 F.2d at 1096-97.

[17]*Id.*

> We believe that a uniform procedure will increase employees' sense of job security by reassuring them that discipline will be applied only *for cause* and, even then, only according to accepted practices and within the limitations of the law.[18]

Moulton contends that this language created a property interest in his employment. The City argues that this language does not create a property interest for two reasons. First it relies on the *Henderson* opinion in which this Court stated that "[a]ny Personnel Policy Manual provisions must be construed in accordance with the Charter and may not grant a right inconsistent with the Charter".[19] Because the Charter does not create a property interest, the City argues that any provision of the employee manual that attempts to create such an interest is automatically inconsistent and should therefore be read out of existence. This interpretation misconstrues the *Henderson* holding. The charter in this case is silent as to whether an employee can be removed at will or only for cause. Thus, a provision in the employee manual that grants a property interest could be construed consistently with the charter.

We find the City's second argument more convincing. The City argues that under Texas law, the "for cause" language in the 1977 manual does not create an express agreement to limit the general at will rule. It relies primarily on *Reynolds Mfg. Co. v. Mendoza,*[20] in which a Texas appellate court reviewed similar language and concluded there was no property interest.[21] The court stated that handbooks are nothing more than general guidelines and not intended to alter the at will rule.[22]

The City does not have an airtight argument. "For cause" language similar to that contained in the 1977 manual has been held to create a property right.[23] However, we agree with the district

---

[18]Plaintiff's Exhibit No. 57, p. 25.

[19]761 F.2d at 1099.

[20]644 S.W.2d 536 (Tex.App.1982).

[21]*Id.* at 538-39. The handbook stated that employees with seniority would be "discharged for good cause".

[22]*Id.*

[23]*See e.g. Aiello v. United Air Lines, Inc.,* 818 F.2d 1196 (5th Cir.1987) (The Court held that when an employment manual outlines procedures for disciplinary action and discharge and at the same time allows discharge only for good cause, a contract creating a property interest in employment is created.)

court that this issue is not dispositive. As the district court pointed out, any potential right that may or may not have been created by the original manual was revoked by the revised manual.

> In *Hathaway v. General Mills, Inc.,*[24] the Texas Supreme Court held
>
> Generally, when the employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law....
>
> To have knowledge of a modification, the employee must know the nature of the changes and the certainty of their imposition ...[25]

Moulton does not dispute the *Hathaway* rule. In fact he relies on it to support his argument. He argues that because he did not receive notice of the formal adoption of the disclaimer, his property interest created by the 1977 manual is still valid. Moulton digs his own grave with this argument. He focusses solely on the disclaimer and overlooks the undisputed fact that he admittedly was well aware of the changes made by the revised manual. Even absent a disclaimer the revised manual eliminates any previously created property interest by eliminating the "for cause" language.

It is undisputed that the revised manual replaced the original manual well before Moulton was fired. Moreover it clear that Moulton understood the meaning of these changes. The district court found that Moulton had notice of the revised manual and the changes it contained based on the undisputed fact that it was Moulton's job to revise the manual.[26] Regardless of whether the disclaimer was ever formally adopted, the mere fact that Moulton admittedly drafted the disclaimer exhibits his understanding of the revised manual.

Had Moulton not been involved in the drafting of both the revisions as well as the disclaimer, he might have argued that it was not clear from the changes in the manual that his property interest under the old manual had been revoked. In the light of the fact that Moulton admitted to drafting the disclaimer as well as the fact that he was in charge of revising the manual, he cannot argue that he had

---

[24]711 S.W.2d 227 (Tex.1986).

[25]*Id.* at 229.

[26]Moulton was prompted to suggest adding the disclaimer by the Arizona Supreme Court's holding that "for cause" language similar to that in the 1977 manual created a property interest in employment. Moulton's revisions deliberately omitted this "objectionable" language for the express purpose of eliminating any potential property interest in employment.

no knowledge of "the nature of the changes" brought about by the revised manual. Thus, under *Hathaway,* any alleged right created by the 1977 manual was rescinded by the revised manual.

Because we hold that the revised manual alone rescinded any alleged property interest in employment created by the 1977 manual, we need not address Moulton's contention that there is a material issue of fact regarding whether or not he had notice of the adoption of the disclaimer.[27] Additionally, in holding that the revised manual rescinded any prior property interest, we also reject Moulton's contention that the revised manual itself created a property interest.[28]

We AFFIRM the judgment of the district court.

---

[27]We note that the presence of the disclaimer, even assuming it was formally adopted and Moulton had proper notice of it, would not automatically rescind any rights created by language contained in the main text of the manual. *See Aiello,* 818 F.2d at 1198.

[28]Moulton argues that the revised manual itself created a property interest because it expressly created a procedural framework for employees to appeal any disciplinary actions taken against them. In *Zimmerman,* this Court held that "[c]ompliance, or attempted compliance, with guidelines for discipline and discharge found in its employee manual should not be turned against an employer as evidence that it treated the manual as a contract". 932 F.2d at 472.

Additionally, Moulton argues that the revised manual's mention of potential reasons for discharge creates a property interest similar to the one found in *Aiello. See* Note 23, supra. Moulton relies on *Conley v. Board of Trustees of Grenada County Hospital,* 707 F.2d 175, 180 (5th Cir.1983), and *Glenn v. Newman,* 614 F.2d 467, 471-71 (5th Cir.1980), where this Court held that where a policy book enumerates cases for termination, the employer is guaranteeing that dismissal will occur only for those reasons specified. These cases are distinguishable on the basis that the manuals considered in them limited discharge to those causes specified. In this case, the revised manual specifies illegal and unethical acts that may result in discharge. It does not however, purport to limit the possible reasons for discharge to those items listed. Thus, the revised manual did not create a property interest on its own. *See Henderson,* 761 F.2d at 1098.