United States Court of Appeals,

Fifth Circuit.

No. 93-2186.

Joseph M. SCHULTEA, Sr., Plaintiff-Appellee,

v.

David Robert WOOD, et al., Defendants,

David Robert Wood, Homer Ford, W.F. "Slim" Plagens, and Warren K. Driver, Defendants-Appellants.

Aug. 9, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before WISDOM, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiff Joseph M. Schultea, Sr. brought this 42 U.S.C. § 1983 lawsuit against Defendants David R. Wood, Homer Ford, and W.F. Plagens—three councilmen of the City of Tomball—and Warren K. Driver—the city manager—("the Defendants"), alleging that they unlawfully deprived him of his substantive due process rights when transferring him from his position as the City's chief of police to the position of assistant chief. The Defendants moved to dismiss the complaint on qualified immunity grounds. The Defendants now appeal the district court's decision denying their motion. We affirm in part, reverse in part, and remand.

I

Schultea currently is the assistant chief of police in Tomball. In March 1992, Schultea, then the City's chief of police, began investigating allegations that councilman Wood had engaged in

1

criminal activity. On April 9, 1992, Schultea discussed his investigation with city manager Driver and Mario Del Osso, the city attorney. Schultea, Driver, and Del Osso decided that Schultea should forward all information regarding Wood to the Texas Department of Public Safety ("TDPS"). Schultea alleges that Wood learned of his investigation soon after the April 9 meeting because Driver, on April 10, advised Schultea that Wood demanded that Driver "put Schultea on the City Council's April 20, 1992 agenda for adverse action." Driver, according to Schultea, managed to dissuade Wood from pursuing any "threatened retaliation" against Schultea.

On May 27, Schultea, after advising Driver, forwarded to the TDPS additional information about Wood. Later that same day, Schultea learned that Wood, Ford, and Plagens instructed Driver to place Schultea on the June 1 city council agenda, "at which time [the] council would discuss terminating or demoting Schultea." Schultea subsequently requested that the city council declare the portion of the June 1 council meeting pertaining to him to be an "open and public meeting" at which he could address the council and the citizens of Tomball, but the council denied his request. Schultea further contends that, during the same time period, the Defendants made defamatory statements about him "concerning an alleged violation of the City's purchasing ordinance and competitive bid process." In response, Schultea requested a "name-clearing" hearing, which, according to the complaint, the city council denied. On June 2, Driver formally informed Schultea

2

that he had been demoted from police chief to assistant chief.

Schultea subsequently filed this lawsuit in federal district court, alleging that the Defendants terminated him in retaliation for reporting Wood's allegedly criminal activities to the TDPS, in violation of the First Amendment, and that the reassignment occurred without due process, in violation of both his property and liberty interests.[1]  The Defendants filed a motion to dismiss Schultea's constitutional claims under Fed.R.Civ.P. 12(b)(6).  The district court denied the Defendants' motion, holding only that "the complaint ... states a claim against the defendants."

II

We review de novo the district court's decision to deny a motion to dismiss on immunity grounds. *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir.1994).  "We must accept all well-pleaded facts as true, and we view them in the light most favorable to the plaintiff." *Id.*  "The complaint is not subject to dismissal unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chrissy F. v. Mississippi Dept. of Pub. Welfare,* 925 F.2d 844, 846 (5th Cir.1991) (internal quotation omitted).

As public officials, the Defendants "are entitled to qualified immunity from suit under section 1983 unless it is shown

---

[1]Schultea also asserted several supplemental state-law causes of action, including a claim under the Texas Whistle Blower Act, Tex.Gov't Code Ann. § 554.002 (West 1994), a claim under the Texas Open Meetings Law, Tex.Gov't Code Ann. § 551.001 *et seq.,* a claim for the intentional infliction of emotional distress, and a claim for defamation.

by specific allegations that [they] violated clearly established constitutional law."[2] *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992). The qualified immunity determination requires a two-step analysis. In reviewing a denial of qualified immunity, we first must determine whether the plaintiff has stated a violation of a clearly established constitutional right. *Id.* "A necessary concomitant to the determination of whether the constitutional right asserted by the plaintiff is "clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793,

---

[2]"[W]hen government officials are likely to invoke qualified immunity, we demand that a complaint state factual detail and particularity including why the defendant-official cannot maintain the immunity defense." *Colle v. Brazos County,* 981 F.2d 237, 246 (5th Cir.1993). Citing the Supreme Court's recent decision in *Leatherman v. Tarrant County Narcotics Unit,* --- U.S. ----, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), Schultea contends that this Circuit's "heightened pleading" standard "does not square with the liberal system of notice pleading set forth in ... the Federal Rules of Civil Procedure." However, the Supreme Court in *Leatherman* did not "consider whether [its] qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." Because we previously have held that plaintiffs must meet such a hurdle, *see Elliott v. Perez,* 751 F.2d 1472, 1473 (5th Cir.1985), we reject Schultea's contention that he need not. *See In re Dyke,* 943 F.2d 1435, 1442 (5th Cir.1991) ("In this circuit, one panel may not overrule the decision—right or wrong—of a prior panel, absent en banc reconsideration or a superseding decision of the Supreme Court."); *see also Branch v. Tunnell,* 14 F.3d 449, 456-57 (9th Cir.) (panel bound by prior panel's adoption of the heightened pleading standard because *Leatherman* did not undermine that precedent), *cert. denied,* --- U.S. ----, 114 S.Ct. 2704, --- L.Ed.2d ---- (1994); *Kimberlin v. Quinlan,* 6 F.3d 789, 794 n. 9 (D.C.Cir.1993) (holding that because *Leatherman* "did not address heightened pleading in individual capacity suits, our precedent requiring that standard in such suits remains the governing law of this circuit"), *petition for cert. filed,* --- U.S.L.W. ---- (U.S. June 22, 1994) (No. 93-2068).

114 L.Ed.2d 277 (1992);  *see also Hopkins v. Stice,* 916 F.2d 1029, 1030-31 (5th Cir.1990) (A public official "enjoys qualified immunity if a reasonable official would be left uncertain of the application of the standard to the facts confronting him.").  If the plaintiff crosses this threshold, "we next examine the objective reasonableness of the defendant official[s'] conduct." *Salas,* 980 F.2d at 305-06.

## III

To succeed with a claim based on substantive due process in the public employment context, the plaintiff must demonstrate that he had a clearly-established property interest in his employment. *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir.1993).  A property interest in employment may be created by an implied contract.  *Id.*  Because Texas is an employment-at-will state,[3] employment contracts are terminable at will by either party absent a specific contract to the contrary.  *Id.*  Thus, to prevail, Schultea must demonstrate that such a contract existed.  *Id.*

Schultea contends that the City Charter established that he could be removed from his position as chief of police only "for cause."[4]  The Charter provides in pertinent part that:

---

[3]"Property interests are created and their dimensions are defined by existing rules or understandings under state law." *Williams v. Texas Tech Univ. Health Sciences Ctr.,* 6 F.3d 290, 293 (5th Cir.1993).

[4]"Under Texas law, home rule cities, such as [Tomball], generally may create their own offices and establish policies for determining the "manner and mode of selecting officers and prescribing their qualifications, duties, compensation, and tenure of office' in their charters." *Henderson v. Sotelo,* 761 F.2d 1093, 1096 (5th Cir.1985) (quoting Tex.Rev.Civ.Stat.Ann.

5

> The Chief of Police is the senior officer of the Police Department. He is appointed by the City Manager, with the approval of the Council, for an indefinite term.... He is responsible to the City Manager for the administration of the Police Department and the performance of Council-established duties and directives. He may be removed from office by the City Manager, with the approval of the Council.

In *Moulton,* 991 F.2d at 230-31, and *Henderson v. Sotelo,* 761 F.2d 1093, 1096-97 (5th Cir.1985), we reviewed similar charter provisions and held that absent "termination for cause" language, this type of charter provision creates no property interest. Consequently, Schultea had no entitlement to continued employment absent cause for dismissal under the Charter and, thus, had no property interest in his status as police chief.

Schultea nevertheless argues that representations made by the city manager who hired him—Don Taylor—constituted an oral agreement that the City would not remove him from his position as police chief except "for cause." Schultea asserts that Taylor "was the appropriate policy maker who had the authority to modify" the Charter provision relating to the chief of police position. Schultea's argument appears to be that because Taylor was expressly authorized to modify the Charter provision, the modification is valid and binds the City. *See Moore v. Office of Atty. General,* 820 S.W.2d 874, 878 (Tex.App.—Austin 1991) (noting that "the rule that an agent can bind his principal by acts within his apparent authority has been held not to apply to public officials").

---

art. 1175 § 1 (Vernon 1963)). "Thus, such cities may determine by charter whether employment in certain city offices is at will or continuous absent just cause for dismissal, and Texas courts will give effect to such charter provisions." *Id.*

However, Schultea has failed to allege that the City Council ever acted to confer any express authority to act as its agent regarding any changes to the at-will provision of the Charter.[5] *See Hopkins,* 916 F.2d at 1031; *Thermo Prods. Co. v. Chilton Indep. Sch. Dist.,* 647 S.W.2d 726, 732-33 (Tex.App.—Waco 1983, writ ref'd n.r.e.). Moreover, Schultea has not alleged that the Council was ever informed of Taylor's alleged oral agreement with Schultea. Finally, Schultea's transfer to the position of assistant chief did not involve a decrease in salary or fringe benefits,[6] and Schultea does not allege that he was constructively discharged—i.e., that his loss of responsibilities as police chief was so intolerable that a reasonable person would have felt compelled to resign. *See Jett,* 798 F.2d at 754-55. Because a reasonable official could have

---

[5]*Compare United Transp. Union v. Brown,* 694 S.W.2d 630, 632-33 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.) (upholding the validity of an oral contractual limitation upon the union's ability to terminate an employee where the parties stipulated that the union representative agreeing to the limitation "had authority to bind the union").

[6]We previously have stated:

> When a public employee has a legitimate entitlement to his employment, the due process clause may protect as "property" no more than the status of being an employee of the governmental employer in question together with the economic fruits that accompany the position. Although the governmental employer may specifically create a property interest in a noneconomic benefit—such as a particular work assignment—a property interest in employment generally does not create due process property protection for such benefits.

*Jett v. Dallas Indep. Sch. Dist.,* 798 F.2d 748, 754 n. 3 (5th Cir.1986) (citing cases), *aff'd in relevant part and remanded in part,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

concluded on these facts that Schultea could be reassigned to assistant chief "without treading on ground clearly protected by the Constitution," *Williams,* 6 F.3d at 294, the district court should have granted the Defendants' motion to dismiss as to the property interest claim.

IV

Schultea next alleges that the Defendants denied him a liberty interest qualifying for due process protection because the reassignment from police chief to assistant chief, combined with the false accusations that Schultea violated the City's purchasing ordinance, constitutes a loss of employment. Schultea additionally alleges that the Defendants unconstitutionally denied him an opportunity to clear his name. *See Rosenstein v. City of Dallas,* 876 F.2d 392, 395 (5th Cir.1989) ("It is now beyond any doubt that discharge from public employment under circumstances that put the employee's reputation, honor or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment to a procedural opportunity to clear one's name."), *aff'd,* 901 F.2d 61 (5th Cir.) (en banc), *cert. denied,* 498 U.S. 855, 111 S.Ct. 153, 112 L.Ed.2d 119 (1990).

As we stated in *Moore v. Otero,* 557 F.2d 435, 437-38 (5th Cir.1977) (footnote omitted),

> To establish a liberty interest sufficient to implicate fourteenth amendment safeguards, the individual must not only be stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law....
>
> ... When an employee retains his position even after being defamed by a public official, the only claim of stigma

8

he has derives from the injury to his reputation, an interest that [*Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976),] reveals does not rise to the level of a liberty interest. The internal transfer of an employee, unless it constitutes such a change of status as to be regarded as essentially a loss of employment, does not provide the additional loss of a tangible interest necessary to give rise to a liberty interest meriting protection under the due process clause of the fourteenth amendment.

In *Nix v. City of Galean Park,* No. 93-2512 (5th Cir. Jan. 31, 1994), we applied the teachings of *Moore* to a situation in which the plaintiff was demoted from assistant police chief to captain after the chief of police publicly alleged that Nix violated a police department rule, a violation that could have resulted in criminal theft charges. "Utilizing the "stigma-plus' test outlined in *Paul v. Davis,*" we held that the police chief's "public allegations regarding Nix's on-duty use of a public vehicle [in a prohibited manner], together with Nix's reassignment from Assistant Chief of Police to captain, did not deprive Nix of a liberty interest protected by the due process clause of the fourteenth amendment." *Nix,* slip op. at 7-8. "Nix's retention of employment following the alleged "deprivation' negate[d] his claim that he was denied a liberty interest." *Id.* at 8. "The only claim of stigma Nix possesse[d] derives from the injury to his reputation, an interest that does not rise to the level of a liberty interest." *Id.*

Like Nix, Schultea received "the same or substantially similar salary and fringe benefits" after reassignment. *Id.* Similarly, Schultea's retention of employment negates his claim that he was

9

denied a liberty interest.[7]  Thus, we find that Schultea has failed to allege that he was deprived of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.  Consequently, the district court should have granted the Defendants' motion to dismiss as to this claim.[8]

V

Schultea has failed to allege a cognizable claim that the Defendants violated either a property or liberty interest recognized by the Constitution.  Anticipating this holding, Schultea has requested that we remand the case to allow another pleading that might cure the defects.  "Dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified."  *Jacquez v. Procunier,* 801 F.2d 789, 792 (5th Cir.1986); *see also Brown v. Texas A & M Univ.,* 804 F.2d 327, 334 (5th Cir.1986) ("the liberal pleading and amendment standards established by the Federal Rules of Civil Procedure mandate that we remand to allow [the plaintiff] to have another opportunity to plead a cognizable case, if such a case can be made.").  However,

> plaintiffs cannot be allowed to continue to amend or
> supplement their pleadings until they stumble upon a formula

---

[7]Schultea asserts the conclusory allegation that his reassignment was "such a change in status as to be essentially regarded as a loss of employment."  Schultea, however, has not alleged that the transfer deprived him of any significant or substantial duties.  *See Moore,* 557 F.2d at 438 n. 11 ("If Moore had been transferred from corporal's duties to janitorial duties, his loss of status *might* present the type of loss of tangible interest connected with stigmatizing state action that, under *Paul,* could give rise to a liberty interest.") (emphasis added).

[8]Because of our holding, we need not decide whether Schultea was denied a meaningful hearing to clear his name.

that carries them over the threshold.... At some point a court must decide that a plaintiff had a full and fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.

*Jacquez,* 801 F.2d at 792. Therefore, where the pleadings do not state a cognizable claim but, "when viewed under the individual circumstances of the case, demonstrate that the plaintiff has pleaded his *best case,*" there is no need to remand for further pleadings. *Id.* at 793; *see also Morrison v. City of Baton Rouge,* 761 F.2d 242, 246 (5th Cir.1985) (upholding the dismissal of a § 1983 action where "the specific allegations of the amended complaint constitute the plaintiffs' best case for demonstrating that [the defendant] acted outside the scope of ... immunity").

In this case, there is no intimation that Schultea's complaint constitutes his best case.[9] Accordingly, we remand the case to the district court so that Schultea may amend his complaint, if possible, to plead sufficient facts supporting a claim under the Fourteenth Amendment.[10] *See Brown,* 804 F.2d at 336-37.

VI

The Defendants also contest the district court's denial of their motion to dismiss Schultea's First Amendment claim. Schultea contends that the Defendants reassigned him from police chief to

---

[9]Schultea filed his *pro se* complaint on July 2, 1992. Schultea later retained counsel, who filed their notice of appearance on July 29. The Defendants filed their motion to dismiss the next day. Schultea filed his response on August 10, and the district court denied the motion in February 1993.

[10]We, of course, neither express nor intimate any view as to whether, if Schultea should amend his pleadings, he can prove the resultant claims made.

assistant chief in retaliation for his reporting possible criminal acts by Wood to the TDPS. We review de novo the legal question whether Schultea's allegations state a valid claim of retaliation. *Caine v. Hardy,* 943 F.2d 1406, 1415 (5th Cir.1991) (en banc), *cert. denied,* --- U.S. ----, 112 S.Ct. 1474, 117 L.Ed.2d 618 (1992).

A

To assert a retaliation claim cognizable under the First Amendment, a plaintiff must allege facts demonstrating that his speech involved a matter of public concern.[11] *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). To rise to the level of public concern, the speech at issue must have been made primarily as a citizen rather than as an employee

---

[11]If the public concern hurdle is cleared, a second threshold requirement involves balancing the interests of the employee, as a citizen, in commenting upon matter of public concern against the interest of the employer in promoting the efficiency of the public services it performs through its employees. *Knowlton v. Greenwood Indep. Sch. Dist.,* 957 F.2d 1172, 1177 n. 6 (5th Cir.1992). "If the balance is struck in favor of the employee, the case is submitted to the jury on causation"—whether the plaintiff's speech was a "substantial" or "motivating" factor in the defendant's decision. *Id.*

The Defendants, however, do not contend that Schultea's letters should not be considered "speech" within the meaning of the First Amendment, nor do they contend that the pleadings demonstrate that the balance must be struck in favor of the City. Accordingly, we do not consider the "balancing the interests" requirement. Moreover, although the Defendants do contend that Schultea's speech did not motivate their decision to reassign him, the causation issue is not a legal issue for the court to resolve, but instead must be presented to a jury if the plaintiff overcomes the threshold hurdles. *See Knowlton,* 957 F.2d at 1177-78 & n. 6; *Couglin v. Lee,* 946 F.2d 1152, 1157 (5th Cir.1991).

12

addressing matters only of personal concern.[12] *Thompson v. City of Starkville,* 901 F.2d 456, 465 (5th Cir.1990). Whether Schultea's speech was addressed to a matter of public concern is a question of law. *Caine,* 943 F.2d at 1415. In the Rule 12(b)(6) setting, we must determine the character of Schultea's speech by examining the content, form, and context of his statements, as revealed here by the pleadings. *See Connick,* 461 U.S. at 147-48, 103 S.Ct. at 1690. "In making this determination, the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment." *Terrell,* 792 F.2d at 1362.

In light of these principles, Schultea's letters to the TDPS can serve as the basis for a claim that he was reassigned for exercising his First Amendment rights. Although Schultea made no effort to communicate the contents of the letters to the public, "[a] public employee who engages in whistleblowing does not "forfeit[ ] his protection against governmental abridgment of freedom of speech if he decides to express his views privately rather than publicly.' " *Brown,* 804 F.2d at 337 (quoting *Givhan v.*

---

[12]As we have stated,

> Because almost anything that occurs within a public agency *could* be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee. Rather, our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as citizen or primarily in his role as employee.

*Terrell v. University of Tex. Sys. Police,* 792 F.2d 1360, 1362 (5th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987).

13

*Western Line Consol. Sch. Dist.,* 439 U.S. 410, 414, 99 S.Ct. 693, 696, 58 L.Ed.2d 619 (1979)). More importantly, however, the pleadings demonstrate that Schultea's letters relate to a matter of public concern—the possibly criminal acts committed by a public official. *See Brawner v. City of Richardson,* 855 F.2d 187, 191 (5th Cir.1988) (letter containing "serious allegations of possible police misconduct" related to a matter of public concern where letter was sent to the police chief, mayor, city council members, and reporters at a local paper); *Conaway v. Smith,* 853 F.2d 789, 796 (10th Cir.1988) ("Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import."); *Brown,* 804 F.2d at 327 (reports of possible financial improprieties by a public employee related to a matter of public concern). Consequently, Schultea has alleged the violation of a constitutional right.

B

We must next determine whether the constitutional right asserted by Schultea was clearly established at the time the Defendants acted. *See Siegert,* 500 U.S. at 231, 111 S.Ct. at 1793. "A right will be considered clearly established only when its contours are sufficiently clear so that a reasonable official would understand that what he is doing violates that right." *Salas,* 980 F.2d at 310. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light

14

of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "If reasonable public officials could differ on the lawfulness of the defendant's action, the defendant is entitled to immunity." *White v. Taylor,* 959 F.2d 539, 544 (5th Cir.1992).

The Defendants correctly contend that the letters written by Schultea indicate that Schultea spoke not as a citizen, but rather as a law enforcement employee of the City who was reporting possible criminal activity to the proper state agency.[13] However, the mere fact that Schultea reported Wood's possibly criminal acts in his capacity as an employee does not mean that his speech is not protected by the First Amendment. Instead, a public employee's speech is unprotected only when the employee speaks "as an employee *upon matters only of personal concern.*" *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690 (emphasis added); *see also Brown,* 804 F.2d at 337 (allegation that the plaintiff was retaliated against because he, "as a diligent public servant, ... repeatedly reported the alleged corruption, or potential for corruption, to his superiors" stated a cognizable First Amendment claim if pled with the requisite particularity). Here, Schultea's speech was calculated

---

[13]Schultea's letter to the director of the TDPS stated: "I am writing to pass some information on to you, for your consideration...."; "I will give you the story as it was told to me and then what you choose to do with it is fine with me."; and "I believe that there is possibly some criminal activity involved in these transactions and thought I would pass this along to you for your consideration." Indeed, Schultea specifically alleges in the complaint that he informed the TDPS of possible wrongdoing by Wood "in an attempt to carry out the duties and responsibilities of my office of Police Chief in Tomball."

15

to disclose possible misconduct by a public official and not to air only personal disputes or grievances with no relevance to the public interest. *Compare Gillum v. City of Kerrville,* 3 F.3d 117, 121 (5th Cir.1993) (holding that the City could discharge a police officer who merely challenged his role in an investigation of police corruption without running afoul of the First Amendment), *cert. denied,* --- U.S. ----, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994). No reasonable public official in 1992 could have assumed that he could retaliate against an employee because that employee disclosed instances of misconduct by a public official. *See Conaway,* 853 F.2d at 796-97 (public employee's reports of illegal conduct to his superiors addressed a matter of public concern). Accordingly, the district court did not err in refusing to grant the Defendants' motion to dismiss Schultea's First Amendment claim.

## VII

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND this case for further proceedings consistent with this opinion.

16