**UNITED STATES COURT OF APPEALS**
**FOR THE FIRTH CIRCUIT**

No. 01-50452

TERENCE GREGORY,

Plaintiff-Appellant,

VERSUS

TEXAS YOUTH COMMISSION; GIDDINGS STATE SCHOOL; STAN DEGEROLAMI,
Superintendent, in his official capacity and individually;
ANTHONY KING, Residential Dorm Director, in his official capacity
and individually; CAROL CARMEAN, Director of Human Resources, in
her official capacity and individually; DAVE DAVIS, JCO-IV
Supervisor, in his official capacity and individually; LINDA
SMITH, Assistant Superintendent,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas
(99-CV-317)

June 28, 2002

Before DUHE', BARKSDALE, and DENNIS, Circuit Judges.

DUHÉ, Circuit Judge:[1]

    Terence Gregory ("Gregory") appeals the district court's grant

---

    [1]Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

of summary judgment on his retaliation claims and the grant of qualified immunity to the individual defendants. Because Gregory neither made a prima facie case of retaliation nor overcame qualified immunity, we AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

The Texas Youth Commission ("TYC") is a state agency that administers the juvenile incarceration and rehabilitation system for the State of Texas. Giddings State School ("Giddings") is administered by TYC, and houses juvenile offenders. Giddings hired Gregory as a full-time Youth Activity Supervisor I ("YAS I") in 1981. By 1992, Gregory had become a YAS IV, a supervisory position. Gregory applied for the YAS IV position three times before receiving the promotion, and filed discrimination charges for being passed over the first two times.

At all times relevant to this lawsuit, Stan DeGerolami was Assistant Superintendent and Superintendent of Giddings. From 1996 to 2000, Lynda Smith served as Assistant Superintendent at Giddings. From 1994 to 1999, Anthony King ("King") was Director of Residential Life at Giddings, and Gregory's immediate supervisor. At all times relevant to this lawsuit, Carol Carmean ("Carmean") was the Administrator of Human Resources at Giddings, responsible for processing all personnel actions and administering employees' pay and benefits. In 1997, David Davis served as Gregory's immediate supervisor.

Charges of sexual harassment were brought against Gregory,

2

which he alleges were trumped up by King and Carmean. The investigator concluded that Gregory did not engage in sexual harassment, but the TYC legal department nonetheless recommended Gregory's employment be terminated because there was evidence that he engaged in a consensual romantic relationship with a subordinate and that he mistreated his staff. Gregory was instead demoted and placed on probation. He filed a grievance, and the grievance committee upheld his demotion.

Gregory then filed discrimination and retaliation charges. After this, he consistently received written reprimands for failing to report to work, leaving work without ensuring adequate coverage, and giving students money in violation of TYC policy. Gregory also claims he was denied leave without justification and was denied the opportunity to apply for a promotion.

In 2000, Gregory was considered for a promotion and was not selected. After he filed a grievance, TYC administrators reviewed the selection process and agreed it was flawed. The selection was redone, and Gregory received the promotion.

Gregory filed (in relevant part) a complaint alleging race discrimination, retaliation and denial of due process under Title VII, Section 1981, and Section 1983. The case was referred, after consent of all parties, to a Magistrate Judge for disposition. The defendants moved for summary judgment on all claims, and the Magistrate Judge granted summary judgment on all claims except Gregory's Title VII race discrimination claim based on his 1996

demotion. After a jury trial on the remaining race discrimination claim, a verdict was returned for the defendants. The Magistrate Judge entered judgment and awarded costs to the defendants. At issue in this timely appeal are only the grant of summary judgment on Gregory's retaliation claim, and the grant of qualified immunity to the individual defendants.

## DISCUSSION

### I. Standard of Review

This court reviews de novo a grant of summary judgment. Walker v. Thompson, 214 F.3d 615, 624 (5th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Doubts are to be resolved in favor of the non-moving party, and any reasonable inferences are to be drawn in favor of that party. Burch v. Nagodoches, 174 F.3d 615, 619 (5th Cir. 1999).

### II. Retaliation

To survive summary judgment in a Title VII retaliation claim, a plaintiff must first establish a prima facie case of retaliation. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L. Ed.2d 668 (1973). A prima facie case of retaliation exists if the plaintiff shows (1) that he participated in activity protected by Title VII; (2) that he suffered an adverse employment

4

action; and (3) that a causal connection exists between the protected activity and the adverse employment action. Messer v. Meno, 130 F.3d 130, 140 (5th Cir. 1997). Adverse employment actions are ultimate employment decisions, such as "hiring, granting leave, discharging, promoting, and compensating." Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997). Actions not considered "ultimate" are not compensable because they lack consequence. Id. at 708.

Because we agree with the Magistrate Judge that Gregory failed to show that he suffered an adverse employment action, we need not discuss the remainder of the legal standard for a retaliation claim. Discussion of Gregory's failure to allege an adverse employment action follows.

A.   Denial of Promotion

Denial of promotion and merit increases can be adverse employment actions redressable under Title VII, if plaintiff presents evidence that he would have received a promotion or merit increase but for the retaliation. Seaman v. CSPH, Inc., 179 F.3d 297, 301 (5th Cir. 1999). In other words, there must be evidence that the decisions had an ultimate effect.  Gregory failed to set forth any such evidence.

B.   Demotion

Demotion is an adverse employment action for Title VII retaliation purposes. Evans v. Houston, 246 F.3d 344, 351 (5th Cir. 2001). However, Gregory failed to even argue his demotion was

retaliatory until *after* summary judgment was granted against him. Until he filed his Motion for Reconsideration of Summary Judgment, he argued he was demoted because of racial discrimination. Even when he claimed after summary judgment that demotion was a retaliatory adverse employment action, he failed to introduce any supporting evidence. Without any timely pleading or evidence of demotion as a retaliatory adverse employment action, the district court had no choice but to grant summary judgment. See Wallace v. Texas Tech Univ., 80 F.3d 1042, 1052 (5th Cir. 1996).

C.   Written Reprimands

We have consistently held that reprimands do not constitute adverse employment actions for Title VII retaliation purposes. Mattern, 140 F.3d at 707-08; Messer, 130 F.3d at 140. However, Gregory argues that his written reprimands precluded him from consideration for promotions and merit increases under TYC policy, and therefore had a direct effect on ultimate employment decisions. As such, he argues they are actionable adverse employment actions.

In Dollis v. Rubin, 77 F.3d 777 (5th Cir. 1995), we considered a similar argument. The plaintiff there argued that denial of a "desk audit" had restricted her opportunities for promotion. Id. at 779. We held that because the denial of a desk audit had only a tangential effect on plaintiff's upward mobility by removing her from consideration for a promotion, and not an ultimate effect such as causing her to lose her job, it was not actionable under Title

6

VII. Id. at 782.

Gregory's argument is substantially the same as Dollis'. He seeks to raise mediate employment decisions to ultimate status based on their effect on pay raise and promotional opportunities. However, our holding in Dollis demonstrates our reluctance to extend Title VII coverage that far. The written reprimands did not cause Gregory to lose his job, just as the denial of a desk audit did not have an ultimate effect on Dollis. In any event, Gregory has not shown an instance where he was otherwise entitled to a promotion but for having a reprimand on file.

D.    Denial of Leave

Denial of leave can be an adverse employment action for purposes of Title VII retaliation claims, if the denial is substantial. Mota v. University of Texas Houston Health Sci. Ctr., 261 F.3d 512 (5th Cir. 2001). In Mota, we addressed the denial of six months of paid leave for health reasons, which resulted in a loss of the position. Id. at 521-22.

Here, Gregory's alleged denials of leave constitute a much smaller limitation. He was not denied the credit of his annual vacation leave balance, he was merely restricted in the use of that leave on a day-by-day basis. Moreover, he did not lose his position, which would be an ultimate effect. His denial of leave is a minimal restriction that does not amount to an ultimate employment decision.

III. Qualified Immunity

7

Qualified immunity protects a state official from civil liability for damages based upon the performance of discretionary functions, "unless at the time and under the circumstances of the challenged circumstances of the challenged conduct all reasonable officials would have realized that it was proscribed by the federal law on which the suit is founded." Pierce v. Smith, 117 F.3d 866, 871 (5th Cir. 1997). Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation," Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L. Ed.2d 411 (1985), with its purpose being to "avoid excessive disruption of government and permit the resolution of many insubstantial claims in summary judgment." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).

The threshold question in a qualified immunity analysis is whether the facts alleged show the individual's conduct violated a constitutional right. Saucier v. Katz, 121 S.Ct. 2151, 2156, 150 L. Ed.2d 272 (2001). Because we find the answer to that question is no, we need not address the remainder of the qualified immunity test.

Gregory claims that he was deprived of a liberty interest when he was demoted. In order to establish a liberty interest that implicates the Fourteenth Amendment, the challenged adverse employment action must be essentially a loss of employment. Schultea v. Wood, 27 F.3d 1112, 1117-18 (5th Cir. 1994). For this reason, transfers and one-step demotions do not invoke

8

constitutional protections. <u>Moore v. Otero</u>, 557 F.2d 435, 437–38 (5th Cir. 1977) (transfer); <u>Schultea</u>, 27 F.3d at 1117–18 (demotion).

Because Gregory failed to plead a constitutionally cognizable liberty interest, the defendants are entitled to qualified immunity. <u>Yates v. Stalder</u>, 217 F.3d 332, 334 (5th Cir. 2000).

## CONCLUSION

For the foregoing reasons, we find that Gregory did not make a prima facie case of retaliation, nor did he overcome qualified immunity, and we therefore AFFIRM.