Robert MILLER, Plaintiff,

v.

CITY OF NEDERLAND, By and Through, City Manager, Andre WIMER, and Steve Hamilton, Individually and in his official capacity as Director of Public Works for the City of Nederland, and Robbie Smith, Individually and in his official capacity as Street Supervisor for the City of Nederland, Defendants.

No. 1:96–CV–614.

United States District Court, E.D. Texas, Beaumont Division.

Sept. 8, 1997.

Laurence Wade Watts, Timothy M. Bowne, Watts & Associates, Houston, TX, for Plaintiff.

Frank David Calvert, Benckenstein & Oxford, Beaumont, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN PART AND REMANDING PLAINTIFF'S PENDENT STATE CLAIMS

SCHELL, Chief Judge.

This matter is before the court on Defendants' Motion for Summary Judgment, which Defendants filed on July 10, 1997. Plaintiff filed a response to Defendants' motion on July 14, 1997. Upon consideration of the motion, response, and applicable law, the court is of the opinion that Defendants' motion should be GRANTED IN PART and Plaintiff's pendent state claims should be REMANDED to state court.

### I. BACKGROUND

On June 26, 1973, the City of Nederland, Texas, hired Robert Miller ("Miller") as an at-will employee. Miller worked for the City of Nederland ("City") for 22 years and rose to the rank of "Laborer II," a classification given to City workers who enjoy a low level of supervisory responsibility. Miller's employment ended when the City terminated him on June 26, 1995. Miller subsequently filed this action in state court in the 172nd Judicial District Court of Jefferson County, Texas, asserting both federal and state claims. Defendants later removed this action to federal court. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

According to the Defendants, Miller's 22 year term of employment with the City was not without turmoil. From 1973 to 1983, Miller received at least three written reprimands or warnings concerning his violations of City policies. Defendants also assert that Miller received numerous verbal reprimands from his supervisor, Robbie Smith ("Smith"), for various work-related problems. Further, Miller missed 70 days of work from 1993 through 1995 for sick leave.

Miller's work-related problems ultimately came to a head on June 23, 1995. That morning, Miller asserts that he was having some personal problems at home and felt that he needed to take a day off to "clear his mind." Miller has admitted in his deposition that he decided to take one of his sick leave days and go fishing. Pursuant to the City's sick leave policy, Miller went to work early that morning and left a note on Smith's office door, notifying Smith that Miller was taking a sick day because he had an upset stomach. When Smith arrived at work, two City employees told him that Miller was not sick but had actually gone fishing at nearby Keith Lake. Smith and a City police officer then drove to Keith Lake where they spotted Miller's truck. Smith immediately returned to his office, obtained a camera, and returned to Keith Lake where he photographed Miller returning to his truck around 2:00 p.m. that same day. Smith then contacted his supervisor, Steve Hamilton ("Hamilton"), Director of Public Works, and informed him of Miller's conduct.

On June 26, 1995, Smith sent a written memorandum to Hamilton recommending that the City terminate Miller's employment for violations of City of Nederland Ordinance No. 147, Article V § 5, which states that evidence regarding abuse of the City's sick leave policy constitutes grounds for prompt dismissal by the employee's department head or the city manager. *See* City of Nederland Ordinance No. 147, Art. V § 5. Hamilton had previously sent a similar recommendation to City Manager Andre Wimer ("Wimer") on June 25, 1995. Hamilton ultimately terminated Miller on June 26, 1995, for violating the City's sick leave policy and provided him with a statement of reasons for his termi-

nation. The City also provided Miller with an order of termination informing him of his right to appeal the termination. Miller appealed his termination to a three-member panel which upheld the City's decision to terminate Miller's employment. Miller then appealed to the Nederland City Council on July 24, 1995, which also affirmed the City's decision to terminate Miller's employment.

Miller subsequently filed the present cause of action against the City, by and through City Manager Wimer in his official capacity, Hamilton, individually and in his official capacity as Director of Public Works for the City of Nederland, and Smith, individually and in his official capacity as Street Supervisor for the City of Nederland. Miller seeks monetary and equitable relief under 42 U.S.C. § 1983 and Article 1, Sections 3 and 19, of the Texas Constitution, claiming that Defendants terminated his employment in violation of his right to due process and right to equal protection under the Fourteenth Amendment and the Texas Constitution. Defendants now move for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. The party moving for summary judgment has the burden to show that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *See id.* at 247, 106 S.Ct. at 2509–10. If the movant bears the burden of

proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. In this instance, the movant is not required to offer evidence to negate the nonmovant's claims. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 885–86, 110 S.Ct. 3177, 3187–88, 111 L.Ed.2d 695 (1990). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant must adduce affirmative evidence. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15.

Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial. *Lavespere v. Niagara Machine & Tool Works, Inc.* 910 F.2d 167, 175–76 (5th Cir.1990), *cert. denied,* 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993). In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 (1986). The evidence of the nonmovant, however, is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.*

## III. ANALYSIS

### A. Plaintiff's Federal Claims

Miller alleges that Defendants are liable under 42 U.S.C. § 1983 for violating his right to due process and right to equal protection under the Fourteenth Amendment. Smith and Hamilton contend that they are entitled to qualified immunity with respect to Miller's claims against them in their individual capacity. Further, the City and the individual defendants, in their official capacities, contend that they are entitled to judgment as a matter of law on Miller's federal claims be-

cause he did not suffer a cognizable constitutional injury.

### 1. Qualified Immunity

Smith and Hamilton argue that they are entitled to qualified immunity from Miller's § 1983 claims. Qualified immunity shields a public official from civil damages liability in his individual capacity. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Qualified immunity is an affirmative defense which must be plead. *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991); *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). To prevail on a qualified immunity defense, the defendant must show that he did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. The court asseses the reasonableness of the defendant's conduct "in light of the legal rules that were 'clearly established' at the time [the action] was taken." *Creighton,* 483 U.S. at 639, 107 S.Ct. at 3038. Further, a legal right is clearly established only if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039.

Because Smith and Hamilton have raised the defense of qualified immunity, Miller must show, as a threshold matter, that they violated a clearly established constitutional right. Miller alleges that Smith and Hamilton violated his rights to substantive due process, procedural due process, and equal protection under the Fourteenth Amendment. The right to due process and the right to equal protection are clearly established. *Creighton,* 483 U.S. at 639, 107 S.Ct. at 3038–39. The test of whether a law is clearly established, however, is not applied at such a general level. *Id.* Instead, the contours of the right must "have been 'clearly established' in a more particularized, and

hence, more relevant, sense." *Id.* at 640, 107 S.Ct. at 3039.

#### a. Miller's due process claims

■ Therefore, to prevail on his substantive due process claim, Miller must demonstrate that (1) he had a property right in his job and (2) that the termination of that interest was either arbitrary or capricious. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir.1993). In the public employment context, a property interest in one's job can exist pursuant to statute, ordinance, local rule, or contract. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). State law determines whether such an interest actually exists. *Id; Moulton,* 991 F.2d at 230. Texas is an employment-at-will state; therefore, either party may terminate the employment contract at-will, absent a specific contract to the contrary. *Moulton,* 991 F.2d at 230; *Zimmerman v. H.E. Butt Grocery Co.,* 932 F.2d 469, 471 (5th Cir.1991), *cert. denied,* 502 U.S. 984, 112 S.Ct. 591, 116 L.Ed.2d 615 (1991) (citing *East Line & Red River R.R. Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888)).

■ Miller concedes that he was originally an at-will employee of the City of Nederland. Nevertheless, Miller argues that the City created a property interest in either of two ways. First, Miller contends that City of Nederland Ordinance No. 147 ("Ordinance")[1] created a property interest in his employment. Miller points to Article VI Section 2 of the Ordinance, which outlines a City department head's authority to take disciplinary action. Section 2(c) states that a department head can terminate an employee after two violations of the City's absence or sick leave policy, written notice to the employee, and a preliminary penalty of days off from the job. *See* City of Nederland Ordinance No. 147, Art. VI § 2(c). Miller argues that this provision modified the nature of his employment from "at-will" to "for cause" and thereby created a property interest in continued employment.

---

1. Although Miller refers to an employee handbook as well as the Ordinance in his Original Petition, the handbook and Ordinance are actually the same document.

Miller's argument misses the mark. When an ordinance or manual describes conduct that may result in termination, but does not limit the possibility of termination to the acts listed, the manual does not create a property interest. *Moulton*, 991 F.2d at 232 n. 28; *Cote v. Rivera*, 894 S.W.2d 536, 541 (Tex.App.–Austin 1995, no writ). In other words, "procedural rights that protect due process, such as hearings and grievance proceedings ... cannot be used to 'bootstrap' an employee into having an entitlement." *Rivera*, 894 S.W.2d at 541.

Here, nothing in the Ordinance serves to modify the nature of Miller's at-will-employment. The Ordinance simply provides procedures regarding absences and sick leave which an employee must follow, and details what might happen if an employee fails to comply with these policies. For example, the Ordinance's disciplinary section is not limited to abuses of the sick leave policy—it also includes impermissible absences from the job site. Further, Article V § 5(B)(6) provides: "Evidence of malingering, or the abuse of this benefit, will constitute grounds for prompt dismissal or disciplinary action by either the Department Head or the City Manager." City of Nederland Ordinance No. 147, Art. V § 5(B)(6). Most importantly, Section 3 states that the listed grounds "for disciplinary actions are not intended to be exclusive and shall be supplemented by departmental rules and regulations." *Id.* at Art. VI § 3. Thus, by its own express terms, the Ordinance did not give Miller a property interest in his job.

Miller's second argument in support of his substantive due process claim is that his supervisors' conduct implicitly modified the at-will nature of his employment contract. Under Texas law, only an express agreement can modify an at-will contract. *See, e.g., Rivera*, 894 S.W.2d at 541; *Mott v. Montgomery County*, 882 S.W.2d 635, 638 (Tex.App.–Beaumont 1994, writ denied). Miller does not contend that Defendants expressly modified his contract. Quite the contrary, Miller argues that Hamilton and Smith led him to believe that they could only terminate him for cause, because they did not discipline or sanction other employees who engaged in similar or even more severe misconduct than Miller. Even when the court takes Miller's allegations as true, such conduct arguably constitutes nothing more than an implied modification of an at-will contract. Therefore, neither Hamilton, Smith, nor the City created a property interest in Miller's employment.

Because Miller was an at-will employee, he did not have a property interest in continued employment. Thus, Miller did not have a substantive due process right to continued employment. Consequently, the court need not address whether Hamilton and Smith violated this right or whether their conduct was reasonable. Hamilton and Smith are entitled to qualified immunity with respect to Miller's substantive due process claim.

Miller's second argument under the Due Process Clause focuses on the procedural due process component of the Fourteenth Amendment. Miller contends that Defendants deprived him of his constitutionally protected property interest in continued employment by failing to afford him adequate process. *See* Plaintiff Miller's Response to Defendants' Motion for Summary Judgment, page 13. Procedural due process guarantees that a state actor cannot (1) deprive a person of a constitutionally protected interest in life, liberty, or property, (2) without adequate procedural protections. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–41, 105 S.Ct. 1487, 1491–93, 84 L.Ed.2d 494 (1985). In the context of government employment, the court must decide as a threshold matter whether the complaining employee had a protected property or liberty interest in continued employment. As stated by Miller's counsel at the April 18, 1997, case management conference, Miller is not asserting that the Defendants deprived him of a liberty interest. Furthermore, for the same reasons stated above, Miller did not have a protected property interest in continued employment with the City. Absent an express contract to the contrary, a public employee is an at-will employee. Miller has produced no affirmative evidence that either his original employment contract or a subsequent express modification to his contract ever changed the nature of his employment from

"at-will" to "for cause." Therefore, Miller did not have a constitutional right to continued employment under the procedural component of the Due Process Clause, which Defendants could have violated. Accordingly Hamilton and Smith are also entitled to qualified immunity on Miller's procedural due process claim.

### b. Miller's equal protection claim

In addition to his due process claims, Miller argues that Defendants violated his right to equal protection. State actions that classify individuals along racial lines are analyzed under strict scrutiny. *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 227, 115 S.Ct. 2097, 2112–13, 132 L.Ed.2d 158 (1995). When a plaintiff does not complain of state action that either violates a fundamental personal right or focuses on a suspect classification such as race, religion, or alienage, however, the state action is presumptively constitutional and is subject to the rational basis test. *See, e.g., City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). Such state action passes constitutional muster as long as it is rationally related to a legitimate state interest. *Id.* at 303–04, 96 S.Ct. at 2516–17. Under the rational basis test, "it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *Id.* at 303–04, 96 S.Ct. at 2517 (citing *Ferguson v. Skrupa,* 372 U.S. 726, 732, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93 (1963)).

Here, Miller does not allege that the City discriminated against him because he is a member of a suspect class. Miller claims only that Hamilton and Smith treated him differently than other employees who were not terminated even though they engaged in misconduct more severe than his own. Even when taken as true, Hamilton and Smith's conduct cannot be said to rise to the level of invidious discrimination required to support a claim under the Equal Protection Clause of the Fourteenth Amendment.

The City has a legitimate interest in disciplining its employees for violating City policies and procedures in order to ensure that City business is carried out in a timely and efficient manner without wasting its funds.

City officials such as Hamilton and Smith are necessarily afforded discretion in carrying out their duties. Among these discretionary duties is the duty to ensure that their subordinates follow City guidelines and procedures, such as those set forth in the Ordinance explaining conduct constituting grounds for termination. Miller has failed to produce any affirmative evidence that either the purpose or effect of these policy provisions was to invidiously or arbitrarily discriminate against him.

Indeed, Miller's personal file contains complaints, memoranda, and written warnings regarding his conduct while an employee of the City. Miller concedes that he was fired for abusing the City's sick leave policy when he went fishing on a day when he reported to his supervisors that he was too sick to come to work. The Ordinance expressly warns City employees that they can be terminated for violating the City's sick leave and work absence policy. Miller's allegations simply do not raise a fact issue regarding his equal protection claims. A federal court may "not sit as a super legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines...." *Dukes,* 427 U.S. at 303, 96 S.Ct. at 2517. Accordingly, just as with Miller's due process claims, Hamilton and Smith are entitled to qualified immunity with respect to Miller's equal protection claim.

Because Hamilton and Smith are entitled to qualified immunity, Miller may not proceed with his federal damages claims against them. Nevertheless, qualified immunity does not bar Miller's claims for equitable relief against Hamilton and Smith in their official capacities. *See, e.g., Owen v. City of Independence,* 445 U.S. 622, 638 n. 18, 100 S.Ct. 1398, 1409 n. 18, 63 L.Ed.2d 673 (1980); *Minton v. St. Bernard Parish Sch. Bd.,* 803 F.2d 129, 134 (5th Cir.1986); *Littlejohn v. Rose,* 768 F.2d 765, 772 (6th Cir.1985), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1260, 89 L.Ed.2d 570 (1986). Hamilton and Smith will thus be entitled to summary judgment on such claims, if at all, only on some other legal basis.

### 2. Miller's Claims Against the City and Hamilton, Smith, and Wimer in Their Official Capacities

In addition to Hamilton's and Smith's qualified immunity defense in their individual capacities, all Defendants argue that they are entitled to summary judgment on Miller's claims for monetary and equitable relief under 42 U.S.C. § 1983 because did they not cause Miller any cognizable constitutional injury. To state a claim under § 1983, a plaintiff must show (1) that a person (2) acting under "color of state law," (3) deprived him, or caused him to be deprived, of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983 (1988); *Collins v. City of Harker Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 1065–66, 117 L.Ed.2d 261 (1992). Thus, when a plaintiff asserts a § 1983 claim against a municipality, the court must determine "(1) whether the plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins,* 503 U.S. at 120, 112 S.Ct. at 1066. For precisely the same reasons stated above in the court's qualified immunity analysis, Miller has failed to show that he suffered any constitutional deprivation. Thus, the court need not address the remaining elements of Miller's § 1983 claim.

Accordingly, Defendants are entitled to summary judgment on all of Miller's claims for monetary and equitable relief under § 1983. Therefore, all that remain are Miller's pendent claims arising under the Texas Constitution.

### B. Plaintiff's Pendent State Claims

Pursuant to the principles of economy, convenience, fairness, and comity, the court declines to exercise supplemental jurisdiction over Miller's pendent state claims and is of the opinion that such claims should be remanded to state court. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 622–23, 98 L.Ed.2d 720 (1988); *Reese v. Anderson,* 926 F.2d 494, 501 n. 9 (5th Cir. 1991).

### IV. CONCLUSION

For the reasons stated above, it is ORDERED that Defendants' Motion for Summary Judgment on Plaintiff's claims pursuant to 42 U.S.C. § 1983 be GRANTED. It is further ORDERED that, because all federal question claims have been disposed of, this court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). The state law claims are, therefore, REMANDED to the District Court of Jefferson County, Texas, 172nd Judicial District. In light of the foregoing order, all pending motions related to this matter are rendered MOOT.